In the Matter of the Claim of MARTHA M. CONNELLY,
against HUNT FURNITURE COMPANY et al., Respondents.
STATE INDUSTRIAL BOARD, Appellant.

Workmen's compensation — master and servant — tests to
be applied in discriminating under the statute between acci-
dent and disease — infection of embalmer's helper while
handling corpse causing blood poisoning resulting in death —
award properly made — injection of poison an accidental
injury within meaning of statute — subdivision 7 of section 2
of statute construed and explained.

1. In discriminating between accident and disease or between disease
and injury, in proceedings under the Workmen's Compensation Law,
the tests to be applied are those of common understanding as revealed
in common speech.

2. Where an embalmer's helper, while handling a corpse in the line
of his duty, became infected by gangrenous matter which entered a
slight cut in his hand and later spread to his neck when he scratched
a pimple with the infected finger, causing general blood poisoning
from which he died, an award for his death was properly made under
the Workmen's Compensation Law.  The injection of the poison was
itself an accidental injury within the meaning of the statute and
the contact had its occasion in the performance of the servant's
duties.   There was thus not merely an accident but one due to the
employment.

3. The wording of the statute (Workmen's Comp. Law, § 2, subd.
7), which speaks of " accidental injuries arising out of and in the course
of the employment " and also of " such disease or infection as may
naturally and unavoidably result therefrom," does not warrant an
argument that infection is coupled with disease as something other
than an accident or injury, though a possible concomitant.   The
intention was by the addition of these words to enlarge and not to
narrow.   Infection, like disease, may be gradual and insidious, or
sudden and catastrophic.   It may be an aggravation of injuries
sustained in the course of the employment and arising therefrom,
in which event it enters into the award though its own immediate
cause was unrelated to the service.   It may be an aggravation of
injuries which in their origin or primary form were apart from the
employment, in which event, if sudden and catastrophic and an
incident of service, it will supply a new point of departure, a new

starting point in the chain of causes, and be reckoned in measuring the award as an injury itself. (*Matter of Jeffreyes* v. *Sager Co.*, 198 App. Div. 446; 233 N. Y. 535, distinguished.)

*Matter of Connelly* v. *Hunt Furniture Co.*, 212 App. Div. 225, reversed.

(Argued February 25, 1925; decided March 31, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 16, 1925, reversing an award of the State Industrial Board made under the Workmen's Compensation Law and dismissing the claim.

*Albert Ottinger, Attorney-General* (*E. C. Aiken* of counsel), for appellant. The employee in this case received an accidental injury arising out of and in the course of employment by infection from a dead body from which infection he died. (*Brintons* v. *Turvey*, [1905] App. Cas. 230; *Grant* v. *Kynoch*, 12 B. W. C. C. 78; *Lewis* v. *Ocean A. & G. Corp.*, 224 N. Y. 18; *Horrigan* v. *Post-Standard Co.*, 224 N. Y. 620; *Hart* v. *Wilson & Co.*, 227 N. Y. 554; *Scoville* v. *Tollers Machine Works*, 231 N. Y. 510; *Plass* v. *C. N. E. R. R. Co.*, 169 App. Div. 826; *Eldridge* v. *Endicott-Johnson Co.*, 220 N. Y. 21.)

*William H. Foster* for respondents. The employee did not receive an accidental injury within the meaning of the Workmen's Compensation Act. (*Grey* v. *Semet Solvay Co.*, 231 N. Y. 518; *Pursell* v. *Lever & Co.*, 193 App. Div. 920; *Plass* v. *C. N. E. Ry. Co.*, 221 N. Y. 472; 227 N. Y. 499; *Hart* v. *Wilson & Co.*, 227 N. Y. 555; *Odell* v. *Adirondack E. & P. Co.*, 223 N. Y. 686; *Horrigan* v. *Post-Standard Co.*, 224 N. Y. 620; *Eldridge* v. *Endicott-Johnson Co.*, 228 N. Y. 21; *Scoville* v. *Tollers Machine Works*, 231 N. Y. 510; *Lewis* v. *Ocean A. & G. Corp.*, 224 N. Y. 18.)

CARDOZO, J. Claimant's son, Harry Connelly, was employed by an undertaker as an embalmer's helper. In the line of his duty, he handled a corpse, which by reason of the amputation of a leg had become greatly

decayed and was full of gangrenous matter. Some of this matter entered a little cut in his hand, and later spread to his neck when he scratched a pimple with the infected finger. General blood poisoning set in, and caused his death. His dependent mother obtained an award for death benefits. The Appellate Division reversed, and dismissed the claim.

" ' Injury ' and ' personal injury ' mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom " (Workmen's Compensation Law [Cons. Laws, ch. 67], § 2, subd. 7). A trifling scratch was turned into a deadly wound by contact with a poisonous substance. We think the injection of the poison was itself an accidental injury within the meaning of the statute. More than this, the contact had its occasion in the performance of the servant's duties. There was thus not merely an accident, but one due to the employment. We attempt no scientifically exact discrimination between accident and disease or between disease and injury. None perhaps is possible, for the two concepts are not always exclusive, the one of the other, but often overlap. The tests to be applied are those of common understanding as revealed in common speech (*Lewis* v. *Ocean Accident & Guarantee Corporation*, 224 N. Y. 18, 21; cf. *Van Vechten* v. *Am. E. F. Ins. Co.*, 239 N. Y. 303, 307). We have little doubt that common understanding would envisage this mishap as an accident, and that common speech would so describe it. Germs ˙may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time (*Matter of Jeffreyes* v. *Sager Co.*, 198 App. Div. 446; 233 N. Y. 535). For this as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a

disease and not an accident. Our mental attitude is different when the channel of infection is abnormal or traumatic, a lesion or a cut. If these become dangerous or deadly by contact with infected matter, we think and speak of what has happened as something catastrophic or extraordinary, a mishap or an accident (cf. *Lewis* v. *Ocean A. & G. Corp., supra,* at p. 21), though very likely a disease also. "A common sense appraisement of every-day forms of speech and modes of thought must tell us when to stop " (*Bird* v. *St. Paul F. & M. Ins. Co.,* 224 N. Y. 47, 51).

If Connelly's death was the outcome of an accident, as we think indisputably it was, only a strained and artificial terminology would refuse to identify the accident with the pernicious contact and its incidents, and confine that description to the scratch or the abrasion, which had an origin unknown. On the contrary, when a scratch or abrasion is of itself trivial or innocent, the average thought, if driven to a choice between the successive phases of the casualty, would find the larger measure of misadventure in the poisonous infection. The choice, however, is one that is needless and misleading. The whole group of events, beginning with the cut and ending with death, was an accident, not in one of its phases, but in all of them. If any of those phases had its origin in causes engendered by the employment, the act supplies a remedy.

We think this reading of the statute is well supported by authority. The earlier cases on the subject are decisions by the House of Lords. *Brintons, Ltd.,* v. *Turvey* (1905 A: C. 230) held that there was an " injury by accident," where a bacillus passed from wool to the eye of a workman, and infected him with anthrax. That judgment, in some of its aspects, was quoted with approval by this court in *Lewis* v. *Ocean Accident & G. Corp. (supra)* where the controversy had to do, however, not with a claim under the statute, but with a policy of insurance. There was reiteration and extension of the

ruling in *Innes* v. *Kynoch* (1919 A. C. 765), a case identical in its essentials with the one before us now.  An abrasion of the knee, the origin of which was unknown, became infected in the course of work, and a remedy was sustained.  In our own court, *Horrigan* v. *Post Standard Co.* (224 N. Y. 620) was a case where a workman who had cut one of his fingers was poisoned through an infection suffered while cleaning out a urinal, and *Hart* v. *Wilson & Co.* (227 N. Y. 554), a case where a puller of wool, suffering from eczema of the hands, became a sufferer from tetanus as the result of germs which entered the system through the cracks in his skin.  *Matter of Jeffreyes* v. *Sager Co.* (198 App. Div. 446; affd., on opinion below, 233 N. Y. 535) is cited to the contrary, but it differs in important features.  There the employee of a photographer, who dipped her hand in a developing solution many times a day for more than a week, was poisoned and lost a finger through the gradual action of the chemicals.  The claim was disallowed.  The contacts were voluntary, and the process of absorption was through channels of entry both natural and normal.  More important, however, " the injuries resulted from no occurrence which is referable to any particular moment of time which is definite " (198 App. Div. 447).  The ensuing injuries were thought to be an occupational disease.

We make little progress when, viewing infection as an isolated concept, and ignoring its channels of attack or the manner of its coming, we say, upon the authority of science, that infection is a disease.  It may be this, and yet an accident too.  This is distinctly recognized in section 48 of the statute, if it might otherwise be doubtful. Sunstroke, strictly speaking, is a disease, but the suddenness of its approach and its catastrophic nature have caused it to be classified as an accident (*Ismay, Imrie & Co.* v. *Williamson*, 1908 A. C. 437, 441; *Gallagher* v. *Fidelity & Casualty Co.*, 163 App. Div. 556; 221 N. Y. 664; *Matter of Murray* v. *Cummings Construction Co.,*

232 N. Y. 507). Tuberculosis is a disease, yet if it results from the sudden inhalation of poisonous fumes, it may also be an accident (*Matter of O'Dell* v. *Adirondack Electric Power Co.*, 223 N. Y. 686). A like ruling has been made where some extreme and exceptional exposure has induced pneumonia or rheumatism (*Coyle* v. *Watson, Ltd.*, 1915, A. C. 1; *Glasgow Coal Co., Ltd.*, v. *Welsh*, 1916, 2 A. C. 1, 10). Nor does it clarify the problem much to characterize the act as voluntary, unless we can also say of the volition that involved in it there was foresight of the peril and acceptance of the consequences (*Messersmith* v. *Am. Fidelity Co.*, 232 N. Y. 161, 165, 166). If Connelly had knowingly injected a germ into the cut, then indeed there would have been a volition inconsistent with an accident. A finding might then be made that there was a "willful intention of the injured employee to bring about the injury" (Workmen's Comp. Law, § 10). As it is, there is no evidence of his appreciation of the danger, and none that the contacts, so far at least as they included the scratch and the pimple, were designed and deliberate rather than heedless or inadvertent. The range of accident would be reduced, indeed, to vanishing dimensions, if we were to take out of the category every case in which the physical movement had been willed without adverting to the consequences (*Messersmith* v. *Am. Fidelity Co.*, supra). The laborer who cut the poison ivy and was awarded compensation (*Plass* v. *Central N. E. R. R. Co.*, 169 App. Div. 826; 226 N. Y. 449) intended to cut grass though he did not know that it was poisoned. The undertaker's helper intended to embalm a corpse, and found to his undoing that he had been impregnated by putrefying matter adhering to his hand.

An argument is built upon the wording of the statute (Workmen's Comp. Law, § 2, subd. 7). The statute speaks, as we have seen, of "accidental injuries arising out of and in the course of the employment" and also of "such disease or infection as may naturally and unavoid-

ably result therefrom." The point is made that infection is here coupled with disease as something other than an accident or an injury, though a possible concomitant. We think the intention was by the addition of these words to enlarge and not to narrow. Infection, like disease, may be gradual and insidious, or sudden and catastrophic. It may be an aggravation of injuries sustained in the course of the employment and arising therefrom, in which event it enters into the award though its own immediate cause was unrelated to the service. It may be an aggravation of injuries which in their origin or primary form were apart from the employment, in which event, if sudden and catastrophic and an incident of service, it will supply a new point of departure, a new starting point in the chain of causes, and be reckoned in measuring the award as an injury itself.

The order of the Appellate Division should be reversed, and the award of the State Industrial Board affirmed, with costs in this court and the Appellate Division.

POUND, CRANE and LEHMAN, JJ., concur; HISCOCK, Ch. J., McLAUGHLIN and ANDREWS, JJ., dissent and vote to affirm the order of the Appellate Division on opinions of KELLOGG and VAN KIRK, JJ., below.

Order reversed, etc.