Before STATE INDUSTRIAL BOARD, Respondent.

FLORA LERNER, Respondent, v. RUMP BROS. and Another, Appellants.

Third Department, May 6, 1925.

Workmen's compensation — accidental injury — definition — claimant's intestate was outside salesman in wholesale fruit and vegetable business — intestate entered refrigerator in June without protection of heavy clothing to show goods to customer — intestate remained in refrigerator about ten minutes, much longer than he expected to remain — same afternoon cold developed followed by pulmonary edema, cerebral embolism and septic endocarditis, and intestate died about six months later — intestate suffered accidental injury.

If any injury comes to a workman in the course of his employment, due to any occurrence arising out of it which is referable to a definite time and of the happening of which he can give notice to his employer, such occurrence and such injury constitute an accidental injury within the Workmen's Compensation Law, whether the injury is a visible hurt to the body caused by some external force or whether it is a disease or infection induced by sudden and catastrophic exposure.

Accordingly, the claimant's intestate, who was employed as an outside salesman in the wholesale fruit and vegetable business, suffered an accidental injury causing his death, since it appears that on the morning of June 2, 1923, while working at his employer's plant, he entered the refrigerator in the performance of his duties, for the purpose of showing goods to a prospective customer; that he rarely had occasion to enter the refrigerator and when he did so he remained but a very short time; that on the morning in question he entered the refrigerator without the protection of heavy clothing ordinarily worn by those who worked in the refrigerator; that it was his intention to remain therein but a short time but that as a fact he remained in the refrigerator about ten minutes and while there handled some boxes which caused him to perspire; that he felt cold while

in the refrigerator, the temperature of which was not below the freezing point; that in the afternoon of the same day he became ill and the next day called his physician who diagnosed the case as grippe and sciatica due to his catching cold while in the refrigerator; that the physician discovered a condition of endocarditis of long standing which was aggravated by the grippe and became acute and was one of the immediate causes of his death, the other causes being pulmonary edema and cerebral embolism; that he died on November 22, 1923. The intestate was not accustomed to working in the refrigerator and did not expect to stay in it as long as he did and did not, therefore, protect himself with heavier clothing. His presence in the refrigerator for ten minutes was an unusual occurrence due to the necessity of showing the merchandise to a new customer. The intestate's sudden exposure to this extreme and exceptional degree of cold and his prolonged exposure to it, unprotected, the character and effects of which he had miscalculated or through inadvertence had failed to foresee, was a definite event which, according to medical proofs, culminated in his disability and death; it was a mishap unlooked for, not expected nor designed, and constituted an accident.

H. T. KELLOGG, J., dissents.

APPEAL by Rump Bros. and another from an award of the State Industrial Board, made on the 28th day of April, 1924.

*Nellis & Nellis* [*Merwyn H. Nellis* of counsel], for the appellants.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

HINMAN, J.:

The State Industrial Board has found that Maurice Lerner was employed as a salesman in a wholesale fruit and vegetable business; that on the morning of June 2, 1923, while working at " his employer's plant, and while showing fruit and vegetables to a customer of his employer in the refrigerator of said employer's plant, and because of the sudden transition from the superheated atmosphere on the outside of said refrigerating plant to the chilly atmosphere in the interior thereof, and as his duties necessitated his remaining in said refrigerator for 10 minutes, he received a chill that naturally and unavoidably caused a cold to develop which lowered his disease-resisting power, and as a result, pulmonary edema and cerebral embolism and septic endocarditis developed and caused his death on November 22, 1923; the proximate cause of death being the injury that he received in the refrigerator of his employer's plant on June 2, 1923."

There is evidence to show that the deceased employee was an outside salesman who rarely had occasion to enter the refrigerator and then, as he says, only for a " second " at a time; that on this morning a new customer wanted to go through the plant, which was an unusual occurrence; that the deceased did not expect to stay in the refrigerator as long as he did and thought it was not

necessary to put on heavier clothing, as was done by those who were in the habit of going into the refrigerator; that he was in there about ten minutes and handled some boxes, causing him to perspire a little while so doing; that he had no cold or pain and was apparently well before; that while in the refrigerator he felt cold; that the temperature in the refrigerator in the summer time is very cold, although not below the freezing point, and the mean temperature outside on June second was seventy-six degrees; that after leaving the refrigerator that morning the deceased went to the office to turn in his order and at the time complained of feeling cold; that about two or three o'clock in the afternoon he " felt bad " and went home; that he complained of having caught cold and the next day not being able to move because of pain in his hip and· having headache and other bodily aches, he sent for a physician; that the physician diagnosed his condition as " grippe and sciatica due probably to his catching cold while he was in this refrigerator " and also found a condition of endocarditis of long standing which he said was aggravated by the grippe; that the exposure to the cold air in the icebox without heavier clothing to protect him had a tendency to suddenly reduce the surface temperature of the body, to shut off perspiration and cause the poisons thus being thrown off to be reabsorbed by the system; that this sudden exposure of deceased and for such a length of time was a competent producing cause of his grippe and sciatica, causing lowered resistance and aggravating his endocarditis which became acute and was one of the immediate causes of his death.

We cannot say that there was no legal evidence to establish causal relation between the exposure and the disability and death. The question whether there was an accidental injury within the meaning of the Compensation Law is a more difficult question, upon which we would be inclined to follow our decision in the case of *D'Oliveri* v. *Austin, Nichols & Co.* (211 App. Div. 295), if it were not for the more recent decision of the Court of Appeals in *Matter of Connelly* v. *Hunt Furniture Company* (240 N. Y. 83). In the latter case the Court of Appeals held that the injection of poison into a workman's finger and neck from contact with gangrenous matter during the course of his employment, setting up general blood poisoning and causing death, was itself an accidental injury, even though the scratch or abrasion through which the infection entered the body " had an origin unknown." The court said: " The whole group of events, beginning with the cut and ending with death, was an accident, not in one of its phases, but in all of them. If any of those phases had its origin in causes engendered by the employment, the act supplies a remedy." The

court holds that even though infection may be a disease, it may be an accident too, where its approach is not " gradual and insidious," but " sudden and catastrophic." We take it that if any injury comes to a workman in the course of his employment due to any occurrence arising out of it which is referable to a definite time and of the happening of which he can give notice to his employer, such occurrence and such injury constitute an "accidental injury " within the act in question, whether the injury is a visible hurt to the body caused by some external force or whether it is a disease or infection induced by a " sudden and catastrophic " exposure. This is illustrated by the Court of Appeals by sunstroke, by the sudden inhalation of poisonous fumes causing tuberculosis and by two English cases cited with approval which seem to be directly in point in the instant case. The court says: " A like ruling has been made where some extreme and exceptional exposure has induced pneumonia or rheumatism. (*Coyle* v. *Watson, Ltd.*, 1915 A. C. 1; *Glasgow Coal Co., Ltd.*, v. *Welsh*, 1916, 2 A. C. 1, 10.)" In those cases the mishap of disease was said to be accidental, " an unlooked for mishap or an untoward event which is not expected or designed," arising from " miscalculation of forces or inadvertence to them." In one case there was extreme and exceptional exposure to a cold draught in a mine and in the other there was an exceptional entry into cold water and prolonged exposure to it, the effects of which exposure, in each case, being miscalculated or unforeseen, proved unexpectedly injurious. In the instant case the deceased was unaccustomed to working in the refrigerator and did not expect to stay in it as long as he did. He failed to protect himself with heavier clothing. It was an unusual occurrence due to the necessity of showing the merchandise to a new customer. His sudden exposure to this extreme and exceptional degree of cold and his prolonged exposure to it, unprotected, the character and effects of which he had miscalculated or through inadvertence had failed to foresee, was a definite event which, according to medical proofs, culminated in his disability and death. It was a mishap, unlooked for, not expected nor designed, and constituted an accident. The injury which came to him thereby was an accidental injury as well as a disease.

The award should be affirmed, with costs to the State Industrial Board.

All concur, except H. T. KELLOGG, J., dissenting.

Award affirmed, with costs to the State Industrial Board.