BERGER BROS. ELECTRIC MOTORS, INC., Appellant, *v.* NEW AMSTERDAM CASUALTY COMPANY, Respondent.

Fourth Department, December 30, 1943.

334

*Leonard H. Amdursky* and *Samuel Berger* for appellant.

*Carroll M. Roberts* for respondent.

DOWLING, J. We have for review a judgment dismissing the plaintiff's complaint on the merits. The action involved two public liability policies issued by the defendant to the plaintiff to protect it in the conduct of its business having to do with installation and repair of electrical apparatus, electrical equipment and electric motors. The plaintiff had a contract with the Central New York Power Corporation to change the electrical equipment of its customers in Oswego County, New York, from a frequency of twenty-five cycles to a frequency of sixty cycles. The contract was entered into on September 30, 1940. The contract required the plaintiff to furnish and maintain public liability policies and to furnish proof of the fact. The defendant on March 6, 1940, had issued a public liability policy to the plaintiff which would expire in one year from date. On October 3, 1940, the defendant, at the request of the Central New York Power Company, issued a " Certificate of Insurance " certifying that it had issued the aforesaid public liability policy to the plaintiff and that it would advise said company " of notice of cancellation or any changes affecting this certificate." In that instrument, the defendant certified, in substance, that the policy covered " Public Lia-

bility and Property Damage " at " Rochester, N. Y. and else-
where " and that the " Classifications of work covered " were
" Electric power or transmission equipment mfg." — " Elec-
trical apparatus installation or repair " — " Electrical wiring
— within buildings — including installation or repair of fixtures
or appliances." — " Clerical office employees." On March 6,
1941, the defendant issued to the plaintiff a replacement public
liability policy having substantially the same provisions and con-
ditions as had the policy of March 6, 1940. The policy of
March 6, 1940, insured the plaintiff, subject to certain limita-
tions and exceptions, against liability imposed by law as
respects bodily injuries or death suffered as the result of any
accident occurring while the policy was in force. In considera-
tion of an estimated additional premium of nineteen dollars and
ninety-five cents the defendant attached to the policy a " Prop-
erty Damage Endorsement " which extended the policy " to
cover loss from the liability imposed by law upon the Assured
for damages on account of injury to or destruction of property
*   *   *   resulting solely and directly from any accident due to
or caused by the operations specifically set forth in the Schedule
of this Endorsement and at the places mentioned therein, pro-
vided such damage or destruction is caused as a result of acci-
dents occurring while this endorsement is in force. This Endorse-
ment shall not cover damage to or destruction of property as
the result of accidents excluded from the coverage under Condi-
tion ' A ' of the Policy, and, further, shall not cover damage or
destruction if   *   *   * "   due to nine specific causes which do
not apply here. Exclusions, Condition " A ", provided " This
Policy does not cover any accident   *   *   *   (8) resulting from
defective workmanship or material in connection with contracting
operations after the Assured's work is completed ". The
replacement policy issued by the defendant to the plaintiff to
cover the period from March 6, 1941, to March 6, 1942, for an esti-
mated additional premium of nineteen dollars and ninety-five
cents, extended that policy " to cover loss by reason of the liabil-
ity imposed upon the insured by law for damages because of
injury to or destruction of property, including the loss of use
thereof, caused by accident and arising out of the operations
specifically set forth in this endorsement and at the locations
stated herein. This endorsement does not apply to accidents
excluded from coverage by the policy nor " to injury or destruc-
tion of property of five specified kinds which do not apply here.
The Property Damage Endorsement covered the time, the work

and the places specified in both policies and in the certificate of insurance.

George F. Chillson of the town of Hannibal, Oswego County, was a steady patron of the Central New York Power Corporation. He operated a large farm on which he raised turkeys for the market. On his farm Chillson had three Jamesway incubator hatchers for the hatching of turkeys. His hatchers were operated by electric motors which motors turned fans, also referred to as impeller blades, which caused the air to circulate in the hatcher incubators thus rendering them suitable for the hatching of turkey eggs. Prior to December 23, 1940, Chillson's motors and fans operated on a frequency of twenty-five cycles and the fans rotated counter clockwise. The incubators would not function properly if the fans were caused to rotate clockwise.

In pursuance of its contract with the Central New York Power Corporation, and on November 18, 1940, the plaintiff began the work of converting Chillson's electric system from a twenty-five cycle frequency to a sixty cycle frequency. By December 23, 1940, the plaintiff had supposedly completed the work called for by its contract. It left the job and was paid the contract price for its work. Properly installed the motors and the fans would control the circulation of the air currents and the temperature and humidity in the incubators to the degree essential to the proper incubation and hatching of turkey eggs. The plaintiff, its agents and servants, in the performance of its work, removed the old motors and installed new motors designed to run on a sixty cycle frequency and carelessly and negligently so connected and wired the new motors as to cause the fans to rotate clockwise instead of counter clockwise as the plaintiff had agreed to do. The plaintiff did not inform Chillson of the fact that the motors had been so wired and connected that the fans would rotate clockwise.

The incubation season for turkeys opened at Chillson's farm on February 20, 1941. Unaware of the fact that the plaintiff had so installed and wired the motors as to cause the fans to rotate clockwise when in operation, Mr. Chillson prepared the incubator hatchers for service and between that date and May 3, 1941, continued to operate the incubators with the result that the clockwise rotation of the fans either destroyed or so damaged the turkey eggs as to cause damage to Mr. Chillson in excess of the sum of $9,500. On May 3, 1941, the plaintiff, on notice of the improper hookup of the motors, sent its

employees to the Chillson farm where they undid their negligent work and properly wired and connected the motors so that the fans would operate counter clockwise. Mr. Chillson brought action against the plaintiff and the Central New York Power Corporation to recover his damages. The plaintiff immediately notified the defendant of Mr. Chillson's claims and requested the defendant to assume the defense of said action. The defendant refused to defend said action claiming that the action was not within the coverage of the policies. The plaintiff then undertook the defense of said action on its own account. During the course of the trial of that action the parties compromised and settled for $9,500 of which sum the plaintiff paid $5,750 to Mr. Chillson. The plaintiff expended in the defense of that action the sum of $1,912.01.

Plaintiff instituted this action to recover the sum of $7,662.01 being the amount expended by it in the defense, compromise and settlement of the Chillson action. The defendant answered denying liability on the following grounds: (a) that no accident occurred and Chillson suffered no damage during the performance of the plaintiff's work at the Chillson farm; (b), that the loss or damage sustained by Chillson was not covered under the terms or conditions of the policies, or either of them, and said damages were expressly excluded from coverage under the terms of said policies; (c) that the compromise and settlement by the plaintiff with Chillson was had without the consent of the defendant and in violation of the terms and conditions of the policies and the plaintiff is barred from maintaining this action.

At the opening of the trial the parties waived a jury and stipulated to try the case before the Trial Justice on an agreed statement of facts. The facts as stipulated would entitle the plaintiff to recover unless barred by any or all of the interposed defenses. The parties stipulated in part:

" 12. IT IS FURTHER STIPULATED that at the time of installing said motors, plaintiff's employees through ignorance or mistake, carelessly and negligently connected and wired the same with the incubators so that the fans in said incubators rotated in an improper and reversed direction."

" 20. That the motors operated and propelled the impeller or fan blades as aforesaid, and the impeller blades controlled the air flow in said incubators; that the negligent acts of the plaintiff in installing the motors so that the fans ran in a reversed direction resulted solely and directly in an improper circulation of air currents and an improper maintenance of tem-

perature and humidity in said incubators so that, when the turkey eggs were subsequently and in the ordinary course of incubation placed in the said incubators on the dates and in the quantities above set forth by said Chillson, said machines failed to properly incubate during the four week period of incubation and the spoiled hatches, damaged eggs and diseased poults resulted; ·that the negligent acts of the plaintiff's employees in so installing the motors so that the fans ran in a reversed rotation were the sole cause of the failure of the above described number of turkey eggs to hatch, of the death of the number of turkeys that died soon after hatching, and of the diminution in size of the turkeys that survived.''

The learned trial court reached the conclusion '' that there was no accident when the motors were installed or at any time thereafter   *   *   * '' and on that basis alone the complaint was dismissed.

We have seen that the policies covered accidents to person or property '' resulting from defective workmanship '' before '' the Assured's work is completed.''   It is conceded here that the plaintiff's workmanship in installing the motors was defective and that Chillson's damages were caused solely by reason thereof.   This being the case, the plaintiff should recover providing Chillson's loss was caused by accidental means and before the work of installing Chillson's motors and converting his system to a sixty cycle frequency was completed.   One can readily understand that the defect in the workmanship in hitching the motors so that the fans would rotate in the wrong direction easily pervaded the whole job· and that the plaintiff's work was not completed until the defective work was corrected by the plaintiff.   (*Phillip* v. *Gallant,* 62 N. Y. 256, 264; *Spinner* v. *Dutton,* 77 Misc. 112, 114; *Daniel* v. *New Amsterdam Casualty Co.,* 221 N. C. 75.)

Was the injury suffered by Chillson the product of an accident within the fair meaning of the policies?   The learned trial court concluded that '' the normal growth and development of the eggs were impeded and interfered with, not by accident, but by certain environmental conditions brought into play by the negligent installation of the motors.''   This conclusion overlooks the chain of events producing Chillson's loss.   There is no claim that the plaintiff's servants wantonly or willfully hitched the motors so that the fans would rotate in the wrong direction.   The hitching of the motors as they were hitched originally was, therefore, purely accidental.   The whole group of events, beginning with the improper hitching of the motors

and ending with the damage inflicted on Chillson's turkey eggs and on his turkeys was an accident, not in one of its phases **but** in all of them. Every revolution of the fan in the wrong direction was accidental and destructive of Chillson's property. No other cause intervened to contribute to his loss. In *Matter of Connelly* v. *Hunt Furniture Co.* (240 N. Y. 83) the claimant's son was employed by an undertaker as an embalmer's helper. "In the line of his duty he handled a corpse, which by reason of the amputation of a leg had become greatly decayed and was full of gangrenous matter. Some of this matter entered a little cut in his hand, and later spread to his neck when he scratched a pimple with the infected finger. General blood poisoning set in and caused his death. His dependent mother obtained an award for death benefits. The Appellate Division reversed, and dismissed the claim." In reversing the Appellate Division and affirming the award of the State Industrial Board, Judge CARDOZO, writing for the court, said in part at page 86: "The whole group of events, beginning with the cut and ending with death, was an accident, not in one of its phases, but in all of them." In this State "the definitions of ' accident ' and " accidental ' are not strictly limited to the sudden application of some external and violent force." (*Meyer* v. *New York Life Ins. Co.*, 249 App. Div. 243, 246, appeal discontinued 276 N. Y. 557.) "Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes." (*Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161, 165.) " A purely fortuitous coincidence of time and place is not enough. There must be causal relation. An accidental injury is, from its nature, the unintended result of a combination of circumstances." (*Matter of Connelly* v. *Samaritan Hospital*, 259 N. Y. 137, 139.) We think the exposure of Chillson's turkey eggs to the adverse air currents generated by the improper hookup of the fans and the resultant damage to his turkey eggs and turkey chicks were both catastrophic and extraordinary and were assignable to a determinate or single act, to wit, the improper hookup of the fans, which is identifiable in space and time, and that the consequences ensuing from the act constituted injuries accidentally suffered within the meaning of the policies. (*Lagowitz* v. *United States Fidelity & Guaranty Co.*, 281 N. Y. 876, 878.)

The case of *Jackson* v. *Employers' Liability Assurance Corp.* (139 Misc. 686, affd. 234 App. Div. 893, 259 N. Y. 559) principally relied on below, is clearly distinguishable in point of fact. In that case causes, other than lack of heat, the cause assigned,

were instrumental in causing the death of the infant. The court found that the inception of the illness of the infant could not be attributed to inadequate heating at any particular time. In that case also the liability policy sued on was much narrower than the policy in suit here.

The third ground of defense, namely, that the plaintiff is barred from maintaining this action because its compromise and settlement of the *Chillson* action was prohibited by the provisions of the policy, is untenable because the defendant failed to perform its contract duty to defend the said action and its refusal to defend was a waiver of the conditions of the policies relied on. (*Matter of Empire State Surety Co.*, 214 N. Y. 553, 564.)

The judgment should be reversed on the law, with costs, and judgment should be directed in favor of the plaintiff for the sum of $6,412.01 and interest, with costs.

All concur, except TAYLOR and HARRIS, JJ., who dissent and vote for affirmance on the ground that the loss for which damages are sought was not covered by the policies or either one of them.

Present — CROSBY, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Judgment reversed on the law, with costs, and judgment directed in favor of the plaintiff for the sum of $6,412.01 and interest, with costs.