GUILLERMO ATILES MOREU, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent. MATILDE ORTIZ DE SANTIAGO, Injured worker.

No. 469.   Argued March 4, 1953.—Decided May 18, 1953.

---

[2] We do not deem it necessary to copy the above-mentioned provisions of the Regulations.

*Donald R. Dexter, Aída Casañas O'Connor, Luis Muñiz Álvarez* and *Rafael Oliveras Vera* for petitioner. *Miranda Esteve & Martínez Álvarez, Jr.,* and *A. Miranda Cárdenas* for intervener.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Matilde Ortiz de Santiago worked in the School Lunchroom of the town of Barranquitas. On January 28, 1952, the person in charge of sterilizing the dinnerware in said school lunchroom was absent and Matilde had to perform his work. It was a rainy morning and between 10:30 and 11:00 A.M. Matilde while sterilizing the dishes near a window was exposed to the hot water steam. Suddenly, the window, which was closed but not securely fastened, burst open, and just then she felt that the right side of her face paralyzed with the consequent distortion of her mouth and eye to the extent that she was not able to close her eye. Next day, she was examined by Dr. Ramón Badillo, who found that she suffered from a unilateral facial paralysis (Bell type) of the right side and that the ear mastoid was not infected. Since it was his opinion that the paralysis could have

developed under the circumstances described by Matilde, he advised her to see Dr. Santiago, a State Fund physician for further treatment.

The Manager of the State Fund denied said employee the right to medical treatment and compensation on the ground that there was no causal relation between the accident and the paralysis (injury) she suffered. She appealed to the Industrial Commission of Puerto Rico, which affirmed the decision of the Manager and dismissed the appeal, since the medical adviser had reported that the dismissal of the appeal should be affirmed. Feeling aggrieved by said order, the injured employee prayed for and was granted a public hearing before the Industrial Commission. After weighing the evidence offered by the parties, the Commission issued an order declaring that the case was compensable and ordered the Manager to give the injured employee every protection under the law.

The Manager of the State Fund prays in his petition that the decision of the Industrial Commission be reversed on the ground that said Commission committed the following errors:

1. "The Industrial Commission erred in its evaluation of the medical testimony of an expert nature. (See § 11, Act No. 45 of 1935, as amended by Act No. 121 of 1940)", and

2. "The Industrial Commission committed error of law in awarding compensation in this case in the absence of compliance with the three necessary legal requisites."

The first error assigned was not committed. The Commission in referring to the expert medical evidence states in its orders: "Undoubtedly, the medical testimony offered at the public hearing is highly contradictory. On the one hand, two experts testified that the paralysis suffered by the employee was of the Bell type and that there was no causal connection with the alleged accident, on the other hand, another expert testified that unquestionably there is a causal connection between the facial paralysis condition that he observed and the alleged accident, namely, the abrupt change

in temperature. It will be recalled that throughout this order we set forth the five grounds on which Dr. Badillo considered this case compensable . . ." [1]

The Commission is right. Dr. F. Velázquez, a physician of the State Fund, and Dr. J. Cordero, an adviser to the Commission, submitted a written report to the effect that the facial paralysis suffered by the injured employee was not the result of the alleged accident.[2] Dr. Velázquez was the only witness to testify for the State Fund. He stated that he examined Matilde Ortiz Santiago on February 4 and noticed that she was suffering from a facial paralysis, Bell type, that is, a peripheral facial paralysis. He added later: "Facial paralyses of this type have been described as essential facial paralyses, of a genetic type, of unknown origin. Years ago they were termed 'a frigore,' but they have nothing to do with heat or cold. Infectious disorders of the ear and of the

---

[1] At the oral hearing of this case in this Court the petitioner argued in the sense that the five grounds advanced by Dr. Badillo were intended to support his conclusion that the paralysis suffered by the worker was of the Bell type and not to conclude that the case was compensable.

[2] The report signed jointly by both experts reads as follows:

"Diagnosis:

"She alleges that while working in a school lunchroom, sterilizing the dinnerware with hot water, 'I developed a spasm in the face, which impaired my sight and hearing, and I suffered a facial paralysis as well.'

"Medical examination report:

"Considering that the facial paralysis she presents can not be connected with the allegations.

"After examining the injured employee and the record of the SIF we find that the examination performed by Dr. José T. Picó showed a retraction of her right eardrum, unconnected with the accident. We have been informed that the serological tests to which the injured party was subjected were negative and she now presents a peripheral facial paralysis of the right facial nerve (Bell type), which according to the description of the employee herself is in a state of regression and which we do not think resulted from the alleged accident.

"Recommendations wherefore denial should be affirmed.

"Sgd. Dr. Jeramfel Cordero

"Sgd. Dr. F. Velázquez

"February 13, 1952."

Moreover, Dr. Velázquez had previously signed other reports maintaining the same conclusion.

mastoid are often involved—in this case an investigation was performed and it was found that the patient presents a retraction of the eardrum—there was no inflammatory phenomenon or any other disorder at the time, and after our examination we had to conclude that it was that type of Bell's palsy unconnected with any known cause and of a genetic type. I rejected the case as compensable. Later on, we examined the worker with Dr. Cordero, a physician of this Commission, and we agreed . . . he agreed with the opinion I had given to the Fund. Mr. Commissioner, on this date my opinion has not changed." Thereafter, when referring to a report submitted by Dr. Picó, and admitted in evidence, which reads: "The examination of her ear shows a retraction of the eardrum that in my opinion has no connection with the alleged accident," Dr. Velázquez was asked: "Can this retraction of the eardrum be the cause of this facial paralysis?" To which he answered, "I do not think so." On the other hand, Dr. Ramón Badillo, the expert witness of the injured employee, testified as follows:

"On or about January 29, on my way to the city hall, her husband told me that his wife was seriously ill. Since the wife was so ill I was compelled to stop at his house on the way to the municipal hospital to examine her and I found that she was suffering from a unilateral facial paralysis of her right side but as she was complaining of a pain behind her right ear I also examined her to determine whether there was any possibility of an infection of the mastoid or an internal infection of the ear; I examined her, I looked at her, she had a slight fever, the paralysis was very pronounced on her right side. It was my impression that it was a case of what we call Bell's Paralysis.

"Q.—In what way can that be related to the work that she was performing on said day?

"A.—According to the medical record, which I did not examine closely, but from what she informed me, she had been, or rather, that it had happened in the school lunchroom due to changes . . . . to a draft . . . . therefore, relying on the medical report, I was able to arrive at the preliminary diagnosis,

which was the one I had at the moment; because that occurs under those circumstances, as befell her. I didn't have to know anything about the work, rather, the medical report was enough, and as she said that she worked in school lunchrooms I told her: 'It's better that Dr. Santiago, who is the State Fund doctor, continue with your case.' That is the practice that I follow in cases connected with the State Fund, I refer them to him, and then I go on with my patients.

"Q.—Do you wish to examine the Doctor?

"Mr. Rivera Valdivieso, attorney:

"Q.—What is the basis for your conclusion that she was suffering that type of paralysis?

"A.—Number one: Medical record; such sudden change in temperature, her allegation that while she was sterilizing a symptom appeared. Second: That there was no internal infection of the ear. Third: That it is very typical of Bell's palsy to find next day an awful pain behind the ear on the affected side. Fourth: Her age, that these cases occur when there is a brain hemorrhage, her age was not . . . she is not in an age where one expects, an advanced age for these facial paralyses. And fifth, that I found no information in the medical report, regarding a trauma, for these cases occur when there is a trauma and they may occur immediately. These paralyses are of the seventh cranial nerve."

The experts of both parties agree that the injured worker suffered a facial paralysis (Bell type) of the right side. Dr. Velázquez maintains that paralyses of that type are of unknown origin, and that although many years ago they were called "a frigore" they have nothing to do with heat or cold and that said type of Bell's palsy is not connected with any known cause and that it is a genetic type. On the contrary, Dr. Badillo maintains that a sudden change in temperature may cause a facial paralysis (Bell type) and that under the circumstances described by the injured worker, such change produced what befell her, namely, a facial paralysis.

If we consider that the injured employee presented no infection of the ear or signs of a trauma, and, furthermore, that the retraction of the eardrum noticed by Dr. Picó had no connection with the accident and could not be the cause

of the facial paralysis, as testified by Dr. Velázquez, there remained for the consideration of the Commission Dr. Badillo's testimony to the effect that the sudden change in temperature caused the facial paralysis to the injured employee. The Commission believed this theory and therefore its conclusion to the effect that there was a causal connection between the alleged accident and the injury (Bell type facial paralysis) is supported by the evidence. Certain authorities support Dr. Badillo. Refering to Bell's palsy, Dr. Roy R. Grinker, in his book "Neurology," 1942 2d ed., says at p. 421:

"About seventy-five per cent of lesions of the facial nerve fall into the category of the so-called refrigeration palsies commonly termed *Bell's palsy*. Bell's palsy is caused by exposure to cold such as sleeping in a room with a draught or traveling close to an open window in a train or automobile. It starts abruptly with a pain behind the ear and in the neck. Onset of paralysis is first noticed in the morning upon awakening and it may affect all the facial muscles. There may be a slight fever. Usually great alarm is experienced when the condition appears in the middle aged or elderly persons because it is mistaken for a 'stroke'. It is affected in diseases of the middle ear with caries of the petrous bone. In multiple neuritis a facial diplegia frequently occurs. Meningeal syphilis, meningitis or aneurysm cause facial lesions. Fractures of the base of the skull and knife wounds through the parotid gland may sever the nerve. The nerve is occasionally damaged in the new-born by the delivering forceps. Congenitally its nucleus may be absent." (Our translation.)

In the second assignment a more serious question is raised. The petitioner argues that our Workmen's Accident Compensation Act makes compensable, besides the occupational diseases specified in the Act itself, injuries caused by *accidents* and that as in the present case there has been no accident, nor does it involve an occupational disease, the Commission erred in granting compensation to the injured worker.

Pursuant to § 2 of our statute,[3] compensation should be granted to a workman suffering *injuries* by reason of *accidents* caused by any act or function inherent in his work or employment when such accidents happen in the course of said work or employment and as a consequence thereof. However, the statute does not define the term "accident" nor has it been defined in our decisions.[4] In states where said term is not defined in the Act itself, it has been used in an ordinary and usual sense, the courts of such states having adopted the following definition from Webster: "An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event . . . Any fortuitous or nonessential . . . circumstance . . ." Courts as well as Commissions have disagreed in the application of this definition. It would be a useless task to intend to sum up the scope ascribed by decisions to said definition considering the diverse situations of facts presented to the courts. Nevertheless, for a recapitulation of decisions involving the definition of "accident," see Vol. 1, Schneider, Workmen's Compensation Law, p. 516.

The expert medical evidence presented before the Industrial Commission in this case established a causal connection

---

[3] Section 2 of the Workmen's Accident Compensation Act provides:

"Section 2.—The provisions of this Act shall be applicable to all such workmen and employees working for the employers to whom the following paragraph refers, as suffer injury, are disabled, or lose their lives by reason of accidents caused by any act or function inherent in their work or employment, when such accidents happen in the course of said work or employment, and as a consequence thereof; or such as suffer disease or death caused by the occupations specified in the following section. Workmen and employees engaged in domestic service and those whose work is casual and is not included in the business, industry, profession, or occupation of such employer, and also such persons as work in their homes, are expressly excepted."

[4] See, however, *Rodríguez* v. *W. R. Commission*, 36 P.R.R. 41, and *Atiles, Mgr.* v. *Industrial Commission*, 69 P.R.R. 586. We can not say positively that in the latter case we adopted a specific definition of the term "accident."

between the event termed "accident" by the Commission itself, and the facial paralysis (Bell type) suffered by the worker. The symptoms of that paralysis manifested themselves as soon as the window was opened and the worker received the impact of a cold draft. The worker was at that same moment receiving unusual heat produced by the steam from the hot water used to sterilize the dishes. Undoubtedly that event was involuntary, sudden, unforeseen and unexpected.

It has been frequently held, even though there are decisions to the contrary, that injuries resulting from the *elements* (heat, cold, rain, lightning, hurricane, etc.) suffered by a workman while at work, may be considered as sudden and unexpected, hence, accidental. Horovitz, Workmen's Compensation Laws, p. 90. As a general rule accidents caused by atmospheric conditions to which everyone is equally exposed are excluded. *Crespo* v. *Workmen's Relief Commission*, 33 P.R.R. 794, and *Rosado* v. *Workmen's Relief Com.*, 35 P.R.R. 902. We do not think, however, that the instant case falls under that rule. The exposure of this worker to the sudden change in temperature, from hot to cold, when the window suddenly and unexpectedly opened was not an exposure common to others. By reason of her duties she was exposed to the special or peculiar danger of the *elements* and said danger was greater for her (for the reason that she was receiving unusual heat) than for the other persons of the community.

In *Lurye* v. *Stern Bros. Dept. Store*, 275 N. Y. 182, 9 N. E. 2d 828, a facial paralysis (Bell type) suffered under circumstances similar to those of this case was declared compensable. While Fannie Lurye was engaged in the regular course of her employment showing coats to a customer of her employer, a fellow employee switched on an electric fan which caused a draft to be blown upon her, causing her to

sustain a chill, resulting in Bell's palsy. The injury was held accidental.[5]   It was said in that case:

"In the case at hand the claimant was struck by air propelled by the fan.   The result was 'palsy which is limited to one side of the face and is acute in onset and called Bell's'—with consequent distortion of the parts and of the powers of expression. We think the average man would say that so swift and harsh a disablement was an accidental injury when it was so strangely suffered in the ordinary day's work.   See *Lewis* v. *Ocean Accident & Guarantee Corporation, Limited, of London, England,* 224 N. Y. 18, 21, 120 N. E. 56, 7 A.L.R. 1129.   It seems to us that analogy, too, leads to that conclusion.   'Sunstroke, strictly speaking, is a disease, but the suddenness of its approach and its catastrophic nature have caused it to be classified as an accident.'   *Matter of Connelly* v. *Hunt Furniture Co.,* 240 N. Y. 83, 87, 147 N. E. 366, 368, 39 A.L.R. 867.

"For cases like this no general rule can be annunciated. *Mansbacher* v. *Prudential Ins. Co.,* 273 N. Y. 140, 145, 7 N. E. (2d) 18.   Confining ourselves to the findings here made and affirmed, we hold that the claimant was entitled to relief.   *Cf. Industrial Commission of Ohio* v. *Middleton,* 126 Ohio St. 212, 184 N. E. 835."

For other cases for and against the doctrine declaring compensable injuries suffered because of a chill see 3 Schneider, Workmen's Compensation Statutes, p. 2410. *Masse* v. *James H. Robinson Co.,* 92 N. E. (2d) 56 (1950) cites with approval the doctrine laid down in the *Lurye* case, *supra,* to the effect that whether a particular event is an industrial accident is to be determined, not by any legal definition, but by the common-sense viewpoint of the average man.

The petitioner cites in his brief several cases in which the term "accident" has been defined.   Some of them come from

---

[5] Pursuant to the Workmen's Compensation Act of the State of New York, under which that case was decided, injuries or personal injuries are compensable only if they are accidental.   Said statute does not define the word accident but the courts of that State have adopted a definition similar to Webster's.

jurisdictions where the statute itself defines said term and others have adopted, in general terms, Webster's definition above copied. Some of these cases do not support his contention in any manner whatsoever. The most similar to the case at bar is *Zaft* v. *Industrial Commission of Ohio*, 18 N. E. (2d) 122. In accordance with the facts thereof, Rose Zaft worked as a seamstress in a factory. She had had a cold for some time. One day, during the lunch period, while she was sitting near a closed window, another employee opened that window and Rose felt as if the wind had hit her face. She closed the window immediately. Later on, the window was opened again and Rose felt as if a piece of ice had hit her face. From the first exposure to the wind her face pained her. Four days later a doctor diagnosed her case as Bell's palsy. She was denied compensation on the ground that the injury did not arise out of her employment, and it was stated, "Granting she sustained an injury, it came from the direct action of the wind without the intervention of anything in any way connected with her employment, and hence did not arise out of her employment." This reasoning can not be applied to the case at bar. In this case there is a factor connected with the worker's employment, to wit, the unusual heat produced by the steam from the hot water used to sterilize the dishes.

A liberal construction of our Workmen's Accident Compensation Act in the light of its beneficial purposes—*Crespo* v. *Workmen's Relief Commission, supra*, and *Atiles, Mgr.* v. *Industrial Commission*, 69 P.R.R. 586—moves us to decide that Matilde Ortiz de Santiago, the worker, suffered an injury compensable under § 2 of said Act.

The decision appealed from, therefore, will be affirmed.