87 So.2d 653

**EMPLOYERS INSURANCE COMPANY OF ALABAMA, Inc.,**

v.

**James V. RIVES.**

6 Div. 662.

Supreme Court of Alabama.

May 12, 1955.

Spain, Gillon & Young, Birmingham, for petitioner.

Lange, Simpson, Robinson & Somerville, Birmingham, opposed.

GOODWYN, Justice.

We granted certiorari to the Court of Appeals to review the judgment and decision of that court in the case of Employers Insurance Company of Alabama, Inc., v. Rives, 87 So.2d 646.

The question presented involves the construction of a liability insurance policy issued by the Insurance Company to Rives, a contractor, wherein the insurer agreed "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the use thereof, *caused by accident* and arising out of the hazards hereinafter defined." [Emphasis supplied.]

The case was tried by the court, without a jury, on a " 'Stipulation As To Facts' ", of which the following, taken from the Court of Appeals' opinion, is a substantial part:

" 'On to-wit: July 6, 1948, plaintiff, J. V. Rives doing business as Rives Construction Company, entered into a contract with one R. C. Williams of Alabaster, Shelby County, Alabama, jobber for the Shell Oil Company, to install two Tokheim Pumps in place of two old pumps in the filling station of one Buck Wooton at Alabaster, Alabama and to connect said pumps with the underground tanks at said station; that said work was performed on to-wit: July 6th, 7th, 8th and 9th, 1948; that in the process of the performance of this work an old line with a union joined by a connecting nut was uncovered and a disconnection was made in the old line by unscrewing a nut at the union in the old line. In the process of completing the job the pipe and connecting nut was re-covered with earth; that on or about the middle of Sep-

tember, 1948, Mr. Wooton, the station operator, advised Mr. Williams, the jobber, that he was suffering an unusual loss of gasoline and requested that some investigation be made as to how this gasoline was disappearing. Mr. Williams in turn requested the plaintiff to send his crew back to the station and to dig up the line in order to see if the trouble could be ascertained. When the line was again uncovered it was found that the union in the line that had been disconnected by plaintiff's employees was leaking and that at the time of and while making the installation the employees had accidentally and negligently failed to retighten the connecting nut at the union, which nut was so loose that it could be turned with the hand; that up to that time there had been a loss of approximately One Thousand (1,000) gallons of gasoline over and above normal loss for evaporation; that about the time the shortage in the gas was discovered, one Mr. Roscoe Davis, who lived about three hundred feet (300') from the filling station where the installation was made, complained and contended that his well was contaminated with gasoline; that an analysis was then made to determine whether the well was contaminated and it was found that the water was one percent (1%) gasoline; that there was a check made of the strata of the rock formation between the location of the pumps and the well and it was found that the layers of rock ran in the direction of the well; that it was agreed with Mr. Davis that the well would be allowed to set thoroughly for a period of sixty days following the correction of the leak in the pipe to determine whether the well would clear up; that at the end of the waiting period it was found that the well was still contaminated with gasoline. When the ground was uncovered to ascertain the cause of the leak it was found that the ground at the point of the loose connection was thoroughly saturated with gasoline; that when the connecting nut

which had been left loose was tightened there was no further loss from the tanks; that the plaintiff did not furnish the pumps or any of the material but furnished only labor for the performance of the job; that the nut and the pipe on both sides of the nut was a part of the original installation; that when it was found that the well was still contaminated, Mr. Davis then made claim for the value of the well; that the plaintiff ascertained that the cost of constructing said well would be approximately One Thousand Two Hundred Dollars ($1,200.00); that the plaintiff notified the defendant of the damages and called upon the defendant to take over the defense of said claim and to take whatever action the defendant might deem necessary in the premises; that the defendant declined and refused to assume any liability as to said claim, basing its declination on the ground that under the terms of its policy, coverage was not extended for this particular accident; that following such declination of liability plaintiff negotiated settlement with Roscoe Davis, paying him the sum of Eight Hundred Fifty Dollars ($850.00) as the fair and reasonable value for the damages that he had sustained as a result of said contamination.'"

Judgment was rendered in favor of Rives, the insured, for the sum of $850. The Court of Appeals reversed that judgment holding that "the damage to the well was not sustained as the result of an accident, but was caused by plaintiff's negligence in failing to retighten the connecting nut at the union, unattended by any accidental cause, and the result that followed was the natural and probable consequence of such negligent act."

It is apparent that the precise point presented is whether the injury to the well was "'caused by accident'", that is, was the failure of Rives' employees to retighten the connecting nut at the union, resulting in the gasoline leakage, an "accident", as that term is used in the policy. Our view is that it was and that the Court of Appeals was in error in holding to the contrary.

We approach a consideration of this case having in mind the following rules approved in Cook v. Continental Ins. Co., 220 Ala. 162, 164, 124 So. 239, 242, 65 A. L.R. 921, which apply when construing a contract of insurance, viz.:

"* * * 'The intention of the parties must prevail. If that is clear, the courts have no authority to change the contract in any particular (Day v. Home Ins. Co., 177 Ala. 607, 58 So. 549, 40 L.R.A., [N.S.] 652); if doubtful, the court will lean to that meaning most favorable to the insured, remaining, however, at all times within the terms of the contract, which is to say: "Where the provisions of a policy of indemnity are reasonably susceptible of two constructions, consistent with the object of the obligation, one favorable to the assured, and the other favorable to the assurer, that will be adopted which is favorable to the assured." Travelers' Ins. Co. v. Plaster, 210 Ala. [607] 610, 98 So. 909; Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734' [and authorities cited.]"

The basis of the Court of Appeals' decision, as stated therein, is that the injury "was caused by plaintiff's negligence * *, unattended by any accidental cause," and that, therefore, there can be no recovery since the contract of insurance only protects against "'damages because of injury * * * caused by accident'". That is to say, as we understand it, that if an injury is found to be the result of negligence such finding necessarily is exclusory of a finding that the injury resulted from an accident. Such appears to be the holding of a line of cases from other jurisdictions, as indicated by some of the authorities cited in the Court of Appeals' opinion. However, there is also a line of cases, followed in Alabama, holding that the term "accident" does not necessarily exclude the idea of negligence. As stated in 1 C.J.S., Accident, pp. 439, 440:

"In its more general sense the term does not exclude human fault called

negligence, but is recognized as an occurrence arising from the carelessness of men, and the fact that the negligence of the person injured contributed to produce the result will not make it any less an accident; and in this sense, the word has been defined as a fortuitous circumstance, preventable, and not prevented; an unexpected or unforeseen event happening with or without human fault."

From 38 Am.Jur., Negligence, § 6, p. 647, is the following:

"As defined by some courts, the word 'accident' means happening by chance or not as expected. So defined, the term does not exclude the idea of negligence."

This court has been inclined to give a liberal construction to the word "accident". In Honeycutt v. Louis Pizitz Dry Goods Co., 235 Ala. 507, 509, 180 So. 91, 92, the restricted definition of "accident" was clearly put to one side in favor of the more liberal construction. It was there said:

" 'Strictly speaking, an accident is an occurrence to which human fault does not contribute, and the term has accordingly been variously defined as an unusual and unexpected event happening without negligence; a casualty which could not be prevented by ordinary care and diligence; an event happening unexpectedly and without fault. But this is a restricted meaning.

" 'In its more general sense the term does not exclude human fault called negligence, but is recognized as an occurrence arising from the carelessness of men.' 1 C.J. pp. 392, 393, § 5.

"And it has been held here, that 'accident repels the imputation of faults committed, but not of duties omitted.' Grant v. Moseley, Adm'r, etc., 29 Ala. 302, 305; Loreno v. Ross, 222 Ala. 567, 133 So. 251; Montevallo Mining Co. v. Little, 208 Ala. 131, 93 So. 873."

In American Mut. Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 537, 183 So. 677, 678, the suit was for declaratory judgment to determine whether the Insurance Company, as insurer of the Furnace Co., was bound by its contract of insurance to defend an action at law brought against the Furnace Co. by one Reed. Involved was the construction of an insurance policy similar in wording to the one now under consideration. In that case the policy contained the following provision:

" 'This agreement shall apply only to such injuries so sustained by reason of accidents occurring during the policy period limited and defined as such in item 2 of said declarations.' "

Reed's complaint against the Furnace Company alleged:

" * * * that plaintiff contracted silicosis and tuberculosis by reason of the unsafe condition of his place of employment where he was engaged from April 1926 to May 1936, due to improper ventilation in such place where particles of dust and metal circulated in the air. That along about the first of May 1936, while so engaged he was made sick in that way, but that it did not appear suddenly, violently or by accidental means but gradually appeared to grow progressively worse as a result of said continuous effect of said dust and particles of metal, and that defendant did not use reasonable diligence to provide a reasonably safe place in which to do his work."

It is apparent that Reed, in charging in his complaint that defendant "did not use reasonable diligence to provide a reasonably safe place in which to do his work", in effect charged defendant with being negligent. In holding that the insurer was bound by its contract of insurance to defend the Furnace Company, this court said:

" * * * The policies cover accidents which occur within the period of their respective term. A tort is often an accident, as when injury re-

sults from negligent conduct, and it may be of a continuous sort, and, if so, a recovery may be had for all damages which occurred within the period of limitations, 37 Corpus Juris 897, and by successive actions. Louisville & Nashville R. Co. v. Higginbotham, 153 Ala. 334, 44 So. 872.

"When an act is continuous and all the time tortious and wrongful, it should not be exempted from such classification as an accident because it extends for a long period of time, however difficult it may be to separate the amount of damage done within the period of the statute of limitations from that occurring in the period preceding. Lehigh Portland Cement Co. v. Donaldson, 231 Ala. 242, 164 So. 97; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624; Lehigh Portland Cement Co. v. Higginbotham, 232 Ala. 235, 167 So. 259.

"It is clear that the complaint undertakes to set out a cause of action for a continuous tort extending through a period of ten years, six of which defendant had insurance with this insurer. As we construe the complaint, therefore, it is not for an occupational disease, but is for an accident caused by a tort continuous in nature."

What was said in Berger Bros. Electric Motors, Inc., v. New Amsterdam Casualty Co., 267 App.Div. 333, 46 N.Y.S.2d 64, 68, seems to be of peculiar significance here. The question there was whether damages to turkey eggs in an incubator resulting from improper circulation of air due to failure of a contractor's employees to properly install impeller blades on an electric motor used for cooling the incubator, resulted from an "accident" within liability policies covering the contractor's liability for injury to property as the result of an accident. The trial court had agreed with the insurer's argument that the damages resulted from negligence and not an accident. In reversing on appeal the appellate court said:

"Was the injury suffered by Chillson the product of an accident within the fair meaning of the policies? The learned trial court concluded that 'the normal growth and development of the eggs were impeded and interfered with, not by accident, but by certain environmental conditions brought into play by the negligent installation of the motors'. This conclusion overlooks the chain of events producing Chillson's loss. There is no claim that the plaintiff's servants wantonly or wilfully hitched the motors so that the fans would rotate in the wrong direction. The hitching of the motors as they were hitched originally was, therefore, purely accidental. The whole group of events, beginning with the improper hitching of the motors and ending with the damage inflicted on Chillson's turkey eggs and on his turkeys was an accident, not in one of its phases but in all of them. Every revolution of the fan in the wrong direction was accidental and destructive of Chillson's property. No other cause intervened to contribute to his loss. In Connelly v. Hunt Furniture Co., 240 N.Y. 83, 147 N.E. 366, 39 A.L.R. 867, the claimant's son was employed by an undertaker as an embalmer's helper. 'In the line of his duty he handled a corpse which by reason of the amputation of a leg had become greatly decayed and was full of gangrenous matter. Some of this matter entered a little cut in his hand, and later spread to his neck when he scratched a pimple with the infected finger. General blood poisoning set in, and caused his death. His dependent mother obtained an award for death benefits. The Appellate Division reversed, and dismissed the claim.' In reversing the Appellate Division, 212 App.Div. 225, 207 N.Y.S. 695, and affirming the award of the State Industrial Board, Judge Cardozo, writing for the court, said in part at page 86 of 240 N.Y., at page 367 of 147 N.E., 39 A.L.R. 867: 'The whole group of events, beginning with the cut and ending with death, was an accident, not in

·one of its phases, but in all of them.' In this state 'the definitions of "accident" and "accidental" are not strictly limited to the sudden application of some external and violent force.' Meyer v. New York Life Insurance Co., 249 App.Div. 243, 246, 291 N.Y.S. 912, 917, appeal discontinued 276 N.Y. 557, 12 N.E.2d 573. 'Injuries are accidental or the opposite, for the purpose of indemnity, according to the quality of the results rather than the quality of the causes.' Messersmith v. American Fidelity Co., 232 N.Y. 161, 165, 133 N.E. 432, 433, 19 A.L.R. 876. 'A purely fortuitous coincidence of time and place is not enough. There must be causal relation. An accidental injury is, from its nature, the unintended result of a combination of circumstances.' Connelly v. Samaritan Hospital, 259 N.Y. 137, 139, 181 N.E. 76, 77. We think the exposure of Chillson's turkey eggs to the adverse air currents generated by the improper hookup of the fans and the resultant damage to his turkey eggs and turkey chicks were both catastrophic and extraordinary and were assignable to a determinate or single act, to wit, the improper hookup of the fans, which is identifiable in space and time, and that the consequences ensuing from the act constituted injuries accidentally suffered within the meaning of the policies. Lagowitz v. United States Fidelity & Guaranty Co., 281 N.Y. 876, 878, 24 N.E.2d 505."

We are at the conclusion that the Court of Appeals erred in holding that the damage to the well was not sustained as the result of an accident. Accordingly, the judgment of the Court of Appeals is reversed and the cause remanded to that court for further consideration in the light of what has been here said.

Reversed and remanded.

All the Justices concur.