BURKE GRAIN COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81799. Promulgated February 2, 1939.

*P. J. Coffey, Esq.*, and *Peter S. Rask, Esq.*, for the petitioner.
*Albert E. Arent, Esq.*, and *Jane M. Pierce, Esq.*, for the respondent.

336

[black redaction bar]

OPINION.

OPPER: Petitioner, a corporation engaged in the brokerage business, claims an overpayment on the ground of a loss suffered through embezzlements which, although occurring in the tax year, were not in fact discovered until approximately two years later. Respondent resists the claim upon three principal grounds—first, that the loss was not sustained in the tax year because the funds embezzled were margin deposits made by petitioner's customers and therefore trust funds, and on the authority of *John H. Farish & Co.* v. *Commissioner*, 31 Fed. (2d) 79, and similar cases the loss was not sustained unless and until restitution had been made by the taxpayer; second, that no acceptable proof of the amount of the loss appears in the record; and, third, that any loss sustained was compensated for by a payment made to petitioner by its principal stockholder.

The first argument rests upon the erroneous assumption of law that a margin deposited by a client with a broker creates a trust relationship. The rule on this subject, as stated in Meyer on "The Law of Stock Brokers And Stock Exchanges" (p. 252), is that "with respect to funds entrusted to the broker for the purchase of securities on margin, or as collateral to secure a marginal account the broker becomes the debtor of his customer and not the trustee, and is at liberty to mingle them with his own funds and use them for his own purposes." The same rule extends to the proceeds of short sales. *Idem.* The cases sustaining these propositions are decisions of the courts of New York State. We have been referred, however, to no contrary authority under the law of Iowa, of South Dakota, or of any other jurisdiction, and as was said by the Supreme Court in *Richardson* v. *Shaw*, 209 U. S. 365, 377 (a case cited by respondent although for a different proposition), "The rule thus established by the courts of the state where such transactions are the most numerous, and which has long been adopted and generally followed as a settled rule of law, should not be lightly disturbed * * *." There is an apparent conflict between the so-called Massachusetts rule and that more generally accepted as to the location of title to securities held under a margin arrangement. *Richardson* v. *Shaw*, *supra*. But whether title to the securities is considered to be in the broker or in the purchaser does not affect the conclusion that as to any balance of accounts the relationship between broker and client is that of debtor and creditor. *Hammon* v. *Paine*, 56 Fed. (2d) 19, 22, 23;

*Lavien* v. *Norman*, 55 Fed. (2d) 91, 93; *People* v. *Thomas*, 83 (N. Y.) App. Div. 226; 82 N. Y. S. 215, 219. This outcome is not impaired by the testimony of petitioner's president. He stated that the margin payments were "very similar, I would say, to a deposit in the bank." For these reasons we consider the doctrine exemplified by the *Farish* case to be inapplicable and conclude that on this point the proceeding before us is governed by *Peterson Linotyping Co.*, 10 B. T. A. 542; *Southern School-Book Depository, Inc.*, 10 B. T. A. 930; *Piggly Wiggly Corporation*, 28 B. T. A. 412, and *Gottlieb Realty Co.*, 28 B. T. A. 418, in which it was determined that a loss by theft or misappropriation is deductible in the year when the act takes place, regardless of the time of discovery. *Parker Wire Goods Co.*, 8 B. T. A. 448, 453.

The second contention advanced by respondent arises collaterally from a requested ruling upon evidence. Depositions of the embezzler introduced at the hearing were received without being read into the record upon the understanding that all questions as to the admissibility of such testimony would be taken under advisement and ruled upon as part of the present decision. Respondent objects to the receipt of testimony so given in so far as it relates to the amount of the loss. His position is that the petitioner's books were the best evidence and that failure to produce them or satisfactorily explain their absence precludes receipt of secondary proof. While this position may be supportable with respect to questions concerning the contents of the books, the matter at issue here is a fact as to which the embezzler himself necessarily was in possession of personal knowledge, and as to which the books themselves would be purely corroborative. His testimony was not limited to the detailed schedule of peculations for which petitioner's books may have been the original source, but he was also asked:

Q. Mr. Gallagher without reference to petitioner's exhibit 1 at all, are you able to testify as to approximately how much money you extracted and stole from the Burke Grain Company during the period between July 31, 1932 and ending July 31, 1933?

A. Yes approximately.

Q. And approximately how much was that?

A. In excess of $11,000.

This in our view was admissible without doing violence to the "best evidence" rule. *Meade* v. *Keane*, 16 Fed. Cas. No. 9373; affd., 3 Pet 1; *Stern* v. *Local Board of Review*, 135 Iowa, 539; 113 N. W. 339. It seems sufficient to shift the burden of going forward to the respondent, and, in the absence of contrary evidence, to justify our finding of fact that the amount of the loss was $11,000.

Finally, we are unable to conclude that payment made by petitioner's principal stockholder was a compensation for the loss. He

testified that the payment was a "capital assessment" and that "We had to have that much money to make the company solvent and have that much working capital which the Board of Trade required * * * and we charged the loss up to capital." While it is clear that the payment could not have been a loan since the solvency of petitioner would not thereby have been improved, the evidence justifies the conclusion that it was a capital contribution. The result would be to leave the petitioner worse off by the amount of the loss even though liability to the stockholder was represented by the increase in his capital account instead of by a loan. And from the standpoint of the stockholder the funds so contributed are to be regarded as an additional investment in the stock and do not justify any claim to a loss on his part. *W. F. Bavinger*, 22 B. T. A. 1239; cf. *Daniel Gimbel*, 36 B. T. A. 539, 542. In addition, of course, the contribution was made long after the tax year, and apparently without any legal obligation to do so.

For the foregoing reasons we conclude that petitioner sustained an uncompensated loss of $11,000 in the present tax year and that it is entitled to the benefit of a deduction therefor.

*Decision will be entered under Rule 50.*