CHRISTIAN W. KORELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13943. Promulgated June 2, 1948.

*Paul L. Peyton, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

1002

## OPINION.

OPPER, *Judge*: When the coupon rate of interest carried by a bond issue exceeds the going rate for obligations of comparable desirability, the market will tend to place a premium on the bonds. If bonds are purchased for investment under such circumstances, the premium paid must be recovered tax-free out of the earnings of the bond [1] very much as depreciation must be recovered out of the income of depreciable property if the true distinction between income and recovery of capital is to be preserved. Cf. *United States* v. *Ludey*, 274 U. S. 295. With this objective in mind,[2] Congress in 1942 added provisions to the Internal Revenue Code permitting the amortization of bond premium by deductions from gross income.[3]

A complication bound to arise was the amortization of premium on

---

[1] "* * * The difference between the yield and the actual interest rate is simply a return of capital and should be treated as such rather than as a capital loss." (Statement of Randolph Paul, Tax Adviser to the Secretary of the Treasury, Hearings before the Committee on Ways and Means on Revenue Revision of 1942, p. 90.)

[2] "Under existing law, bond premium is treated as capital loss sustained by the owner of the bond at the time of disposition or maturity and periodical payments on the bond at the nominal or coupon rate are treated in full as interest. The want of statutory recognition of the sound accounting practice of amortizing premium leads to incorrect tax results which in many instances are so serious that provision should be made for their avoidance.

"The present treatment, moreover, results in an unjustifiable tax discrimination in favor of tax-exempt as against taxable bonds. Holders of taxable bonds not only pay a tax, as upon income, upon that portion of the so-called interest payments which is in reality capital recovered but are denied the deduction, except as restricted by the capital loss provisions, of the corresponding capital 'lost' at maturity. Holders of tax-exempt bonds, on the contrary, are allowed to deduct premium as capital loss in spite of the fact that the corresponding amount of capital has been recovered in the guise of interest and no tax has been paid upon it.

"The treatment proposed is mandatory to all taxpayers with respect to wholly tax-exempt bonds and elective to all with respect to bonds fully taxable. In the case of partially tax-exempt bonds, it is mandatory to corporate taxpayers and elective to all other taxpayers.

"The amortization provision is found in section 119 of the bill and its operation is described in detail later in this report." (H. Rept. No. 2333, 77th Cong., 2d sess., p. 47.)

[3] SEC. 23. * * *

(v) BOND PREMIUM DEDUCTION.—In the case of a bondholder, the deduction for amortizable bond premium provided in section 125.

SEC. 125. AMORTIZABLE BOND PREMIUM.

(a) GENERAL RULE.—In the case of any bond, as defined in subsection (d), the following

bonds callable prior to maturity. Such obligations, although not included in the statute, are covered in a subdivision of the regulations dealing with "Callable and Convertible Bonds."[4]

The debentures purchased by petitioner in the tax year and which form the subject of this controversy were both callable and convertible. They were currently callable at the option of the obligor at any time on 30 days' notice at 104 per cent of face. They were convertible at any time at the option of the holder into common stock of the obligor upon payment of the difference between the face of the bond and 140 per cent of par.

Petitioner purchased the debentures at approximately 121 when the common stock of the obligor was selling at 163. Relying upon his interpretation of the statute and the regulations, petitioner deducted the difference between 104, the call price, and 121, his purchase price or basis, as a premium. The entire deduction was taken in the year before us, on the theory that the bond could have been called in that same year, and that in that event the entire premium would have been lost.

---

rules shall apply to the amortizable bond premium (determined under subsection (b)) on the bond for any taxable year beginning after December 31, 1941:

(1) INTEREST WHOLLY OR PARTIALLY TAXABLE.—In the case of a bond (other than a bond the interest on which is excludible from gross income), the amount of the amortizable bond premium for the taxable year shall be allowed as a deduction.

\*       \*       \*       \*       \*       \*       \*

(b) AMORTIZABLE BOND PREMIUM.—

(1) AMOUNT OF BOND PREMIUM.—For the purposes of paragraph (2), the amount of bond premium, in the case of the holder of any bond, shall be determined with reference to the amount of the basis (for determining loss on sale or exchange) of such bond, and with reference to the amount payable on maturity or on earlier call date, with adjustments proper to reflect unamortized bond premium with respect to the bond, for the period prior to the date as of which subsection (a) becomes applicable with respect to the taxpayer with respect to such bond.

(2) AMOUNT AMORTIZABLE.—The amortizable bond premium of the taxable year shall be the amount of the bond premium attributable to such year.

(3) METHOD OF DETERMINATION.—The determinations required under paragraphs (1) and (2) shall be made—

(A) in accordance with the method of amortizing bond premium regularly employed by the holder of the bond, if such method is reasonable;

(B) in all other cases, in accordance with regulations prescribing reasonable methods of amortizing bond premium, prescribed by the Commissioner with the approval of the Secretary.

[4] SEC. 29.125-5 [Regulations 111]. CALLABLE AND CONVERTIBLE BONDS.—The fact that a bond is callable or convertible into stock does not, in itself, prevent the application of section 125. For the purposes of such section, in the case of a callable bond the earlier call date will be considered as the maturity date and the amount due on such date will be considered as the amount payable on maturity, unless the taxpayer regularly employs a different method of amortization which is reasonable. Hence, the bond premium on such a bond is required to be spread over the period from the date as of which the basis for loss of the bond is established down to the earlier call date, rather than the maturity date. The earlier call date may be the earliest call date specified in the bond as a day certain, the earliest interest payment date if the bond is callable at such date, the earliest date at which the bond is callable at par, or such other call date, prior to maturity, specified in the bond as may be selected by the taxpayer. A taxpayer who deducts amortizable bond premium with reference to a particular call date may not thereafter use a different call date in the calculation of amortization deductions with respect to such premium. A convertible bond is within the scope of section 125 if the option to convert on a date certain specified in the bond rests with the holder thereof.

Respondent does not dispute such treatment in the case of a bond callable within the current year, but rejects petitioner's claim here because of the convertible feature of the debentures. His position was set forth in a ruling issued in 1945, dealing with the same issue of debentures as that now in controversy.[5]

Respondent's reasoning to justify rejection of the claimed deduction is not without force. He says in effect that what Congress was dealing with when it enacted section 125 was, as we have seen, the investment premium paid in excess of the call or maturity price of an obligation which was required to be paid in order to purchase interest income. Respondent's regulations, to be sure, do not provide that no bond "convertible into stock" is within the definition of an amortizable obligation, but that "the fact that a bond is * * * convertible into stock does not, in itself, prevent the application of section 125."[6] This, however, advances us only to the point that the mere aspect of convertibility may not necessarily affect the possibility of the payment of an investment premium. Such would be the situation where the relationship between the conversion figure and the market price of the obligor's stock, eliminated value from the conversion privilege. See Badger, Valuation of Industrial Securities, p. 42.[7] But in the present case, both the call price and the conversion figures

---

[5] "* * * If the call provisions of these bonds were to be considered wholly apart from other attendant circumstances, the taxpayer might select the 31st day after the date of purchase as the 'earlier call date,' even though the bonds were not actually called on that date or notice of call had not been given.

"Section 29.125–5 of Regulations 111, provides, however, that the fact that a bond is callable or convertible into stock does not, in itself, prevent the application of section 125. The qualification 'in itself' indicates that other factors may arise which would preclude the application of section 125 of the Code to such bonds.

"The bonds have been selling for approximately 123 and the common stock of the American Telephone and Telegraph Company has been selling for about 163. It will thus be seen that the $123.00 cost of such bond plus the $40.00 conversion fee equals $163.00, the same price for which the stock can be purchased on open market. For nearly two years, the market price of those bonds has fluctuated almost directly in accordance with the quotations on the common stock into which such bonds are, at any time, convertible. This clearly indicates that substantially all of the so-called premium of $23.00 represents the market value of the conversion option, rather than a premium paid for the investment value of the security itself, considered independently of the conversion option. This $23.00, therefore, is not a true bond premium such as would normally be amortized out of gross interest earnings in order to exclude capital recovered under the guise of interest and thus determine the effective yield of the security.

"This office is accordingly of the opinion that the excess of the amount of the basis of these bonds over the amount payable at maturity may not be amortized under section 125 of the Internal Revenue Code. * * *" (1945 P. H., ¶76,157; 1945 C. C. H. ¶6139.)

[6] See footnote 4, *supra*.

[7] * * * The value of convertible bonds is, in fact, dependent on either one of two factors. As long as the value of the issue into which the bond is convertible remains below the point where conversion is profitable, just so long will the value of the bond be dependent entirely on its investment status. When the value of the former rises, however, the value of the convertible issue is a function of two factors, the rate of conversion and the price of the issue into which it may be converted. This may be expressed mathematically as follows:

Investment Value of Convertible Issue _____ I

Conversion Rate _____ R

Market Price of Stock _____ P

Value of Convertible Bond _____ V

I determines V if I is greater than $\frac{P}{R}$; otherwise $V = \frac{P}{R}$

indicate that the premium was paid, not for the investment feature of the bond, but for the rights of conversion.

The final reference in the regulation to a convertible obligation is that contained in the last sentence of the subdivision previously quoted,[8] reading as follows:

> * * * A convertible bond is within the scope of section 125 if the option to convert [on a date certain specified in the bond] rests with the holder thereof.

If this statement could be taken as fairly interpretative, and whatever its meaning may be,[9] it seems clear that it could under no circumstances apply to these facts, and hence could be disregarded here. The debentures held by petitioner were convertible on any date from the minute he acquired them to their possible future call for redemption and consequently not on "a date certain." The result of this sentence would then be neutral and leave open for consideration the question whether the section covered such convertible bonds as those held by petitioner.

The difficulty with respondent's entire position, however, is that it ignores the interpretation which Congress itself placed upon the legislation. In both the Ways and Means Committee report and the Finance Committee report [10] there appears in identical language the following:

> The fact that a bond is callable or convertible into stock does not of itself prevent the application of this section. In the case of a callable bond, the earliest call date will, for the purposes of this section, be considered as the maturity date. Hence, the total premium is required to be spread over the period from the date as of which the basis of the bond is established down to the earliest call date, rather than down to the maturity date. In the case of a convertible bond, *if the option to convert the bond into stock rests with the owner of the bond, the bond is within the purview of this section.* [Italics added.]

The final statement is unequivocal and precisely includes the bonds in controversy. Petitioner's application of the provision to his situation and his computation of the deduction are thus squarely justified by the expression of congressional intent. The portion of the sentence of the regulation quoted above which is enclosed in brackets appears to be a gratuitous addition by respondent not founded upon the statutory language and directly in conflict with its legislative history. We

---

[8] See footnote 4, *supra*.

[9] Respondent suggests the following in his brief as an example of the purpose of that portion of the regulations (p. 22):

"A bond callable at any time on 30 days' notice, is convertible into stock only on January 1, 1950 (a date certain specified in the bond). It would be possible for the issuer, by exercising the call privilege, to defeat the bondholder's conversion right so that any premium paid for the bond might be lost thereby. This might justify the allowance of the deduction for amortization of premium where conversion is provided for on a date certain specified in the bond; whereas, when no date certain is specified, the holder of the bond would be protected by his right to convert, which could not be defeated by the mere exercise of the call privilege."

[10] H. Rept. No. 2333, 77th Cong., 2d sess., p. 80; S. Rept. No. 1631, 77th Cong., 2d sess., p. 94.

are accordingly unable to ascribe to it the validity which would result in authorizing respondent's position in this proceeding. We see no choice but to disapprove the deficiency.

Reviewed by the Court.

*Decision will be entered under Rule 50.*