**COMMISSIONER OF INTERNAL REVE-
NUE v. SHOONG (two cases).**

No. 12136.

United States Court of Appeals
Ninth Circuit.

Sept. 9, 1949.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Fred E. Youngman and Sumner Redstone, Sp. Assts. to Atty. Gen., for petitioner.

Gavin McNab, Schmulowitz, Aikins, Wyman & Sommer, Nat Schmulowitz, Peter S. Sommer and Sidney F. DeGoff, San Francisco, Cal., for respondents.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This review concerns the determination under 26 U.S.C.A. § 125 of the amount of "amortizable bond premium" deduction, if any, from the two taxpayers' gross incomes in the tax year 1944, because of the purchase in June 1944 and holding in that year by each of 5,000 debenture bonds of the American Telephone and Telegraph Company. Since the questions of law and fact are identical for each taxpayer, the reviews were consolidated for hearing.

Each bond is for a principal sum of $100 and bears interest at three (3) percent. It also has a stock purchasing option by which one share of the company's stock may be purchased by the payment to the company of $40 and the surrender of the bond at its face value of $100. This right to purchase may be exercised by the bondholder at once. The bonds were callable by the corporation at $104 on September 1, 1944. Joe Shoong purchased his bonds at $120⅛; Rose Shoong at from $120⅛ to $120⅞.

The taxpayers' 1944 returns each had a deduction from gross income of the difference between the callable $104 and the purchase price of the 5,000 bonds held by each in the tax year. This was claimed as "amortizable bond premium" under 26 U.S.C.A. § 125. The Commissioner disallowed the deduction as not such an amortizable

bond premium, holding that the purchase price of the bonds above their par value arose entirely from the stock purchasing covenant and not from the 3% interest factor of the bond.

On the hearing of the taxpayers' petitions the evidence incontrovertibly sustained the Commissioner's holding that the $20⅛ and $20⅞ above par paid for the bonds was paid solely for the stock purchasing covenant. Since the issuance of the bonds in September 1941 and up to December 1944 their market value had varied with the market value of the Telephone Company's stock of the stock purchase option.[1] Nevertheless, the Tax Court held that the deductions claimed were valid as amortizable bond premiums under 26 U.S.C.A. § 125.

The effect of the Tax Court's holding is that Joe Shoong is allowed a deduction from gross income of $81,879.94, which left him with a net income of $6,770.82, and a tax saving of $58,441.99. Rose Shoong is allowed a deduction of $85,607.29, which gave her a net income of $4,691.59, resulting in a tax saving of $61,841.

We do not think that Congress intended to have its section 125 so construed as to produce this unreasonable result from what in reality is a profitable stock investment. The Commissioner's characterization of the result as "garish" is an understatement.

█ In reaching this conclusion we are guided by the decisions holding that Congress regards all deductions from gross income as acts of its "legislative grace," Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416, and provisions for such deductions "are to be strictly construed" against the taxpayer. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29. We are of the opinion that

*The Amortizable Bond Premium For Which A Tax Deduction Is Provided In 26 U.S.C.A. §§ 23 and 125[2] Is Not The Pre-*

[1]. A table in the stipulation of facts shows that the excess of the sale price of the stock over the sale price of the bonds was about $40 from June, 1943, to August, 1947, and since the bonds were convertible by surrender of the bond and payment of $40 cash for each share, it appears that the so-called premium paid for the bond was really the price of an option to purchase the stock.

Sec. 23 "Deductions from gross income. "In computing net income there shall be allowed as deductions:

\*  \*  \*  \*  \*  \*  \*  \*

"(v) Bond premium deduction. In the case of a bondholder, the deduction for amortizable bond premium provided in section 125."

Sec. 125 "Amortizable bond premium "(a) General rule. In the case of any bond, as defined in subsection (d), the following rules shall apply to the amortizable bond premium (determined under subsection (b) ) on the bond for any taxable year beginning after December 31, 1941:

"(1) Interest wholly or partially taxable. In the case of a bond (other than a bond the interest on which is excludible from gross income), the amount of the amortizable bond premium for the taxable year shall be allowed as a deduction.

"(2) Interest wholly tax-exempt. In the case of any bond the interest on which is excludible from gross income no deduction shall be allowed for the amortizable bond premium for the taxable year.

"(3) Adjustment of credit in case of interest partially tax-exempt. In the case of any bond the interest on which is allowable as a credit against net income, the credit provided in section 25 (a) (1) or (2), or section 26 (a), as the case may be, shall be reduced by the amount of the amortizable bond premium for the taxable year.

"(For adjustment to basis on account of amortizable bond premium, see section 113 (b) (1) (H) ).

"(b) Amortizable bond premium.

"(1) Amount of bond premium. For the purposes of paragraph (2), the amount of *bond premium* [emphasis ours], in the case of the holder of any bond, shall be determined with reference to the amount of the basis (for determining loss on sale or exchange) of such bond, and with reference to the amount payable on maturity or on earlier call date, with adjustments proper to reflect unamortized bond premium with respect to the bond, for the period prior to the date as of which subsection (a) becomes applicable with respect to the taxpayer with respect to such bond.

"(2) Amount amortizable. The amortizable bond premium of the taxable year shall be the amount of the bond premium attributable to such year.

*mium Paid For An Option To Buy Stock Of The Corporation Contained In Its Bond.*

■ Section 125 provides for an "amortizable bond premium" and the computation of its amount, but it does not purport to define that phrase. What it means, must be ascertained from a consideration of the section as a whole, in connection with the report of the Congressional Committee concerning the purpose of the legislation.

Bondholders paying a premium above the bond redemption price or maturity payment of principal because of an interest return above the average for corporate bonds and having them redeemed at less than cost, had their relief confined to the capital loss provisions of section 117 of the Internal Revenue Code, 26 U.S.C.A. § 117.

Congress thought this led to a tax inequality between holders of bonds upon which the interest is exempt from taxation and holders of bonds on which the interest is taxable. In § 125(a) (1) and (2) it gave to holders of interest taxable bonds the option to spread the capital loss through the years of interest payments up to the callable date of the bonds and denied this right to bonds whose interest is not taxable.

Of this, House Report No. 2333, 77th Cong., 1st Sess. (Cum.Bull. 1942-2, 372, 410) with reference to the instant legislation says,

"Under existing law, bond premium is treated as capital loss sustained by the owner of the bond at the time of disposition or maturity and periodical payments on the bond at the nominal or coupon rate are treated in full as interest. The want of statutory recognition of the sound accounting practice of amortizing premium leads to incorrect tax results which in many instances are so serious that provision should be made for their avoidance.

"The present treatment, moreover, results in an unjustifiable tax discrimination in favor of tax-exempt as against taxable bonds. Holders of taxable bonds not only pay a tax, as upon income, upon that por-

"(3) Method of determination. The determinations required under paragraphs (1) and (2) shall be made—

"(A) in accordance with the method of amortizing bond premium regularly employed by the holder of the bond, if such method is reasonable;

"(B) in all other cases, in accordance with regulations prescribing reasonable methods of amortizing bond premium, prescribed by the Commissioner with the approval of the Secretary.

\* \* \* \* \* \* \* \*

"(d) Definition of bond. As used in this section, the term 'bond' means any bond, debenture, note, or certificate or *other evidence of indebtedness,* issued by any corporation and *bearing interest* [emphasis ours] (including any like obligation issued by a government or political subdivision thereof), with interest coupons or in registered form, but does not include any such obligation which constitutes stock in trade of the taxpayer or any such obligation of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or any such obligation held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

Treasury Regulations 111, promulgated under the Internal Revenue Code:

Sec. 29.125-5. Callable and Convertible Bonds. The fact that a bond is callable or convertible into stock does not, in itself, prevent the application of section 125. For the purposes of such section, in the case of a callable bond the earlier call date will be considered as the maturity date and the amount due on such date will be considered as the amount payable on maturity, unless the taxpayer regularly employs a different method of amortization which is reasonable. Hence, the bond premium on such a bond is required to be spread over the period from the date as of which the basis for loss of the bond is established down to the earlier call date, rather than the maturity date. The earlier call date may be the earliest call date specified in the bond as a day certain, the earliest interest payment date if the bond is callable at such date, the earliest date at which the bond is callable at par, or such other call date, prior to maturity, specified in the bond as may be selected by the taxpayer. A taxpayer who deducts amortizable bond premium with reference to a particular call date may not thereafter use a different call date in the calculation of amortization deductions with respect to such premium. A convertible bond is within the scope of section 125 if the option to convert on a date certain specified in the bond rests with the holder thereof.

tion of the so-called interest payments which is in reality capital recovered but are denied the deduction, except as restricted by the capital loss provisions, of the corresponding capital 'lost' at maturity. Holders of tax-exempt bonds, on the contrary, are allowed to deduct premium as capital loss in spite of the fact that the corresponding amount of capital has been recovered in the guise of interest and no tax has been paid upon it."

From the above it is apparent that the Congressional intent in creating the amortizable bond premium deduction was because of the interest provisions of the bonds.

The "sound accounting practice" of amortizing bond premium which the Congressional report says has not been recognized in tax legislation and which the 1942 Act seeks to recognize is that stated by the Tax Adviser to the Secretary of the Treasury, Randolph Paul, before the Ways and Means Committee of the House. It is, "(d) *Amortization of bond premium.* Holders of a tax-exempt security purchased at a premium are today in the unique position of being relieved of tax on the interest paid on the security and of receiving a deductible loss upon redemption or other disposition of the security to the extent of the premium. As the premium at which a bond is obtained represents to the holder merely an effective yield lower than the actual interest rate, the holder is entitled merely to tax exemption solely with respect to such effective yield. *The difference between the yield and the actual interest rate is simply a return of capital and should be treated as such rather than as a capital loss.* On the other hand, the holder of a taxable security purchased at a premium is in the unfortunate position of being taxed upon the interest at high rates and of receiving a capital loss upon redemption whose deductibility is subject to the restrictions placed upon capital losses. *Since the yield rather than the actual interest rate reflects the true income to the taxpayer, only that income should be subject to tax and the capital loss should disappear.*

*"Proper tax treatment in both situations may be obtained through amortization of the premium.* It is suggested that such amortization be mandatory for wholly tax-exempt securities and for partially tax-exempt securities held by a corporation. For all other securities the amortization should be at the taxpayer's election." (Emphasis supplied.)

In the instant bonds the amount of the interest played no part in determining their purchase price above par. There was not the return of capital loss year by year from the interest factor in the bond as contemplated by Paul's statement.

It is obvious that the 1942 Act's embodiment of this accounting practice is not applicable to the price above the principal of the bond attributable solely to a covenant to sell the company's stock at what may bring a profit to the purchaser. The stock option value of the bonds here involved would not decrease by the mere passage of time to the call or maturity date contemplated by the statute.

That Congress was solely concerned with the interest factor of the bonds and amortizable bond premium further appears in section 125(d) providing:

"(d) *Definition of bond.* As used in this section, the term 'bond' means any bond, debenture, note, or certificate or other evidence of indebtedness, issued by any corporation and *bearing interest* (including any like obligation issued by a government or political subdivision thereof), with *interest coupons* or in registered form, * * *." (Emphasis supplied.)

It is reasonable interpretation of the phrase of 125(b) (1) providing for "reference to the amount of the basis (for determining loss on sale or exchange) of such bond" that it concerns only the cost of such bond as described in 125(d), that is, the added cost due solely to its interest bearing factor. This view is further sustained by the provisions of 125(a) (1), (2) and (3) classifying the bonds solely with reference to their interest bearing factor.

Furthermore, to grant as a deduction a capital loss on a bond where there is no

loss is inconsistent with all the other provisions of section 23. An examination of the various subsections shows that all the deductions allowed are either expenses of earning the gross income or amounts expended by the taxpayer which reduce his assets, such as charitable contributions. The cost of a bond above its maturity value because of a favorable interest rate was regarded as an amount expended to earn that interest, and sometimes recoverable as a capital loss. The deductions claimed in the instant case, however, represent no such expenditure to earn interest. The added amount over the maturity value of the bonds here represented the value of the stock purchasing right, which added amount had nothing to do with the call or redemption value of the bond. It earned the buyer nothing. It only brought him a stock speculation.

The above seems a reasonable interpretation of the phrase "amortizable bond premium" even if the "legislative grace" of such tax deductions were not required "to be strictly construed" against the taxpayer, as they must be by the decision in Deputy v. Du Pont, supra, and Helvering v. Northwest Steel Rolling Mills, supra. In so far as the regulations may be deemed so to treat the stock option value as amortizable bond premium they likewise are invalid.

The taxpayers contend that this interpretation of the Ways and Means Committee's report is inconsistent with a further statement of that Committee with reference to section 125 as adopted: *"The fact that a bond is callable or convertible into stock does not of itself prevent the application of this section. In the case of a callable bond, the earliest call date will,* for the purposes of this section, be considered as the maturity date. Hence, the total premium is required to be spread over the period from the date as of which the basis of the bond is established down to the earliest call date, rather than down to the maturity date. *In the case of a convertible bond, if the option to convert the bond into stock rests with the owner of the bond, the bond is within the purview of this section."* [3] (Emphasis supplied.)

We think that, construing the Committee's last quoted statement with the others quoted above, the latter means no more than that bonds convertible into stock are entitled to the benefit of the "amortizable bond premium" of the Act. We do not regard it as a statement of what constitutes amortizable bond premium. To the extent that the premium is paid for a high interest rate, the holder is entitled to its amortization. Here the facts show none of the premiums was paid because of such interest.

For the above reasons we cannot agree with the contrary conclusion reached by the Second Circuit in Commissioner v. Korell, 176 F.2d 152, affirming Korell v. Commissioner, 10 T.C. 1001. Nowhere does that case recognize that the sole stock option value of the bonds there involved would not decrease by the mere passage of time to the call or payment date contemplated by the statute. Nor does it construe the legislative deduction adverse to the taxpayer as required by the decisions above cited.

We sustain the disallowance of the deductions by the Commissioner of Internal Revenue and reverse the decision of the Tax Court.

3. Section 29.125-5 of Regulations 111 has similar provisions to the italicized sentences.