**Howard F. BURNS and Elna A. Burns, husband and wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 31570.

United States District Court
N. D. Ohio, E. D.
May 25, 1959.

Howard F. Burns, William H. Fleming, Cleveland, Ohio, for plaintiffs.

Russell E. Ake, U. S. Atty., Cleveland, Ohio, Charles K. Rice, Asst. Atty. Gen., James P. Garland, Philip R. Miller, George T. Rita, Dept. of Justice, Washington, D. C., for defendant.

WEICK, District Judge.

This action is for the recovery of $1,870.66 (plus interest at 6% from November 1, 1950) alleged as an overpayment of personal income tax for the year 1948. Plaintiffs claim they were entitled to a deduction, from their income, of $2,811.40, as a casualty loss under Section 23(e) (3) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(e) (3), because an ornamental elm tree, located on their residence property, had become afflicted with the "Dutch Elm Disease", and had to be destroyed in consequence thereof.

The deduction was claimed in plaintiffs' income tax return for the year 1948, and when disallowed, they paid the deficiency of $1,707.08 plus interest of $163.58 on November 1, 1950. A claim for refund was disallowed on January 2, 1953 and this suit was filed on January 15, 1955.

There is little, or no, controversy over the basic facts.

Plaintiffs' residence property had a frontage of 195 feet on South Woodland Avenue in the City of Shaker Heights, Ohio and extended to a depth of about 344 feet to the golf course of the Shaker Heights Country Club.

During the 1920's two elm trees were planted in front of the house, one near the east end and the other close to the west end thereof, the intention being for the trees to have somewhat of a framing effect on the house. The trees grew to be large and healthy.

In June of 1948, plaintiffs were advised by the Charles F. Irish Co., Inc., experienced arborists, that there were indications that one of the trees might be afflicted with the Dutch Elm Disease. Tests made at a government laboratory confirmed that fact and efforts were made to save the tree by cutting away the afflicted portion. This proved unsuccessful and it was then decided that the only remedy was to remove the tree entirely. This was done by the Irish firm in August of 1948.

The Dutch Elm Disease is a fungus symptomized by the wilting of the tree leaves. The fungus is spread by the scolytus beetle, by root grafting, or by pruning tools. In this case, it was spread by the beetle. The beetle itself, which travels from one elm tree to another, causes little or no damage. It is only when the beetle is infected with the fungus that any damage occurs.

If the beetle is infected when it bores into the tree, the fungus on its body is communicated to the food and water-conducting cells of the tree immediately beneath the bark, known as the merismatic tissue. These become afflicted with the disease and clog up and the tree becomes, in effect, starved for want of nourishment.

When it was discovered that plaintiffs' tree was afflicted with the fungus they were advised that the only known way of preventing the spread of the disease was to have the tree removed in

its entirety, including the roots, and have it burned. Today, methods of checking the disease have been developed which give a greater chance of saving a diseased tree, but they were not known in 1948.

Throughout the year 1948, Ohio General Code, § 1132 (now Revised Code, § 927.22) and Ordinance No. 4732 of the City of Shaker Heights were both in force. By this legislation, the maintenance or continuance of trees, plants or shrubs infected or infested with injurious insects or plant disease was declared to be a public nuisance and the owner could be required by public authority to remove and destroy them if they could not be successfully treated. Otherwise, the owner was required to cause them to be treated or to adopt such preventive measures as may be ordered. If the owner failed to carry out the orders, the public authority could treat or remove them as was necessary and charge the expense thereof against the property upon which such expense was incurred.

The first matter for consideration is whether plaintiffs actually suffered any loss by the destruction of this tree. In my opinion, they did. The tree in question was one of two elms so situated in the front of the Burns' residence as to "frame" the house. Following the removal of one of the trees the framing effect was lost. Plaintiffs, however, had additional elm trees in the rear of their residence, but because of their location were not as valuable as the front trees.

Edgar L. Ostendorf, a realtor and appraiser of great experience, stated that in his opinion the removal of the tree could have resulted in a $5,000 diminution in the price the property could bring. This, he testified, was due to the fact that in the social strata to which a prospective buyer of such a home would probably belong esthetic considerations were of importance in the purchase of a home.

Leslie Petrie, an experienced arborist, testified that in his opinion the plaintiffs' loss was to be valued at $2,600. This figure represented the effect on the residential value of the loss of the tree. He adequately explained his basis for this conclusion, which was essentially the same as Mr. Ostendorf's. Although Mr. Petrie was not experienced in real estate valuation he was experienced in evaluating plants and trees.

The Government presented Frank Bombay, an Internal Revenue real estate appraiser, to testify on this question. His testimony showed that over the course of years since 1948 the Burns' residence gained substantially in value, and based on construction industry figures should have had a gain in value in 1948.

Assuming that this was true, other comparable real estate was similarly affected and increased in value due in no small measure to inflationary tendencies in our economy. In any event, the Burns' property would have been worth more if the tree had not been removed.

I consider $2,600 for the loss of the tree and the $211.40 expenses incurred in its removal to be fair and reasonable under the circumstances.

 The remaining question here is whether that loss qualifies as a "casualty" within the meaning of Section 23 (e) (3) of the Internal Revenue Code of 1939. 26 U.S.C. (1952 ed.) § 23. I am of the opinion that it does not.

The statute reads as follows:

Sec. 23 "In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\* \* \* \* \* \*

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft."

The original income tax statute passed in 1913 allowed deduction only for losses arising from "fires, storms, or shipwreck." 38 Stat. 114, 167. In 1916, the statute was amended to add the words

"or other casualty, and from theft." 39 Stat. 756, 759.

There appears to be no additional legislative history.

The words "or other casualty" were not defined so that the courts have been required to determine whether the facts in each case come within the scope of the statute. As will be pointed out, this has produced varying results.

Taxpayers rely upon decisions interpreting Workmen's Compensation Acts and casualty and accident insurance policies. In two English cases, workmen employed in wool-combing factories had become infected with anthrax from the wool. In one of the cases the infection settled on the workman's neck where his collar had rubbed a pimple and caused an abrasion. In the second case, the anthrax bacillus settled in the workman's eye. In both cases, the court held that they were entitled to compensation as they were injured by accident arising out of and in the course of employment. Higgins v. Campbell & Harrison, Limited; Turvey v. Brintons, Limited, 1 (1904) K.B.D. 328 App.Cas. (1905) 230.[1]

The accident insurance case relied on is Rheinheimer v. Aetna Life Insurance Co., 1907, 77 Ohio St. 360, 83 N.E. 491, 15 L.R.A.,N.S., 245, where decedent accidentally scratched his finger and blood-poisoning set in resulting in his death. The court held that death was the proximate result of the scratching of his finger and allowed recovery.

Cases of this type are inapposite because they involve a much different rule of construction.

It is well-settled that Workmen's Compensation Acts are liberally construed in favor of injured workmen in order to effectuate the beneficent purposes of the law. Bowling v. Industrial Commission, 1945, 145 Ohio St. 23, 60 N.E.2d 479; 99 C.J.S. Workmen's Compensation § 20, p. 92.

The rule of construction with respect to insurance policies is stated as follows:

It is one of the best known principles of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured or his beneficiary, and strictly as against the insurer. 30 Ohio Jur. (2d) Insurance § 215.

Various reasons are given for liberality in construing policies of insurance. The insured has little or no voice in the preparation of the policy and pays a consideration for protection.

On the other hand, deductions from income are a matter of legislative grace. The burden is upon the taxpayer to show clear statutory authority therefor. Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, 63 S.Ct. 1279, 87 L. Ed. 1607; Deputy v. Dupont, 1940, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Mills Estate, Inc. v. Commissioner, 2 Cir., 1953, 206 F.2d 244.

In determining what the taxpayer may deduct, ambiguities in the statute are not resolved in his favor, but are construed against him. Bagnall v. Commissioner, 9 Cir., 1938, 96 F.2d 956; Commissioner of Internal Revenue v. Shoong, 9 Cir., 1949, 177 F.2d 131. The statute, however, must be construed fairly. Lykes v. United States, 1952, 343 U. S. 118, 72 S.Ct. 585, 96 L.Ed. 791.

Even with the liberal rule of construction, Ohio courts have refused to extend the Workmen's Compensation Act to cases involving diseases (other than occupational) contracted by workmen in the course of their employment.

In Industrial Commission of Ohio v Cross, 1922, 104 Ohio St. 561, 136 N.E. 283, the court denied recovery for typhoid fever contracted by the workman from drinking spring water from a nearby well. The court said:

---

1. These cases involved an occupational disease and usually specific statutory authority exists for the allowance of compensation therefor. Cf. Revised Code of Ohio § 4123.68.

"For it must be recognized that, if the term 'injury' is to be construed to include typhoid fever contracted in the course of employment, it may as well include influenza, pneumonia, tuberculosis, smallpox, ordinary colds, rheumatism, and practically every disease which may be contracted by workmen in the course of employment, * * *" 104 Ohio St. at page 566, 136 N.E. at page 285.

The Cross case was approved and followed in Johnson v. Industrial Commission, 1955, 164 Ohio St. 297, 130 N.E.2d 807. The court said:

"However, as pointed out in the syllabus and in the hereinbefore-quoted portion of the opinion of Industrial Commission of Ohio v. Cross, supra, 104 Ohio St. 561, 136 N.E. 283, the words of our Constitution and of our workmen's compensation statutes do require the conclusion, that the word 'injury' as used in Sections 1465–68 and 1465–82, General Code, can never include a disease. If a disease can never be such an 'injury', it necessarily follows that it cannot be such an 'injury' regardless of the fact that it may represent a physical or traumatic damage or harm and regardless of the further fact that it may be suddenly and unexpectedly or accidentally contracted." 164 Ohio St. at page 306, 130 N.E.2d at page 814.

Cf. Renkel v. Industrial Commission, 1923, 109 Ohio St. 152, 141 N.E. 834 (tuberculosis); Industrial Commission of Ohio v. Russell, 1924, 111 Ohio St. 692, 146 N.E. 305 (loss of vision by motion picture operator incurred from powerful ultra violet ray lights).

Similarly in Burns v. Employers' Liability Assurance Corp., 1938, 134 Ohio St. 222, 16 N.E.2d 316, 117 A.L.R. 733, the court denied recovery on an accident insurance policy for death due to amebic dysentery contracted from drinking water which had been infected by the accidental breaking of a sewer pipe in a hotel.

The court said:

"Certainly, a disease such as pneumonia or typhoid fever is not thought of in everyday language as a bodily injury. As said by Judge Cardozo in Connelly v. Hunt Furniture Co., 240 N.Y. 83, 85, 147 N.E. 366, 367, 39 A.L.R. 867:

" 'We attempt no scientifically exact discrimination between accident and disease, or between disease and injury. None perhaps is possible, for the two concepts are not always exclusive, the one of the other, but often overlap. * * * Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time (Jeffreyes v. Charles H. Sager Co., 198 App.Div. 446, 191 N.Y.S. 354; Id., 233 N.Y. 535, 135 N.E. 907). For this as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident.'

"Yet to uphold the contention of appellee would compel us to say that if the disease was due to any mishap recovery may be had, but not otherwise. Logically this would lead to the conclusion that all diseases are bodily injuries. There would be no difference between an accident policy and a health policy, except insofar as it would be necessary to trace the cause in the former to some mischance." 134 Ohio St. at pages 230–231, 16 N.E.2d at page 320.

Cf. New Amsterdam Casualty Co. v. Johnson, 1914, 91 Ohio St. 155, 110 N.E. 475, L.R.A.1916B, 1018; Mitchell v. New York Life Insurance Co., 1940, 136 Ohio St. 551, 27 N.E.2d 243; Matczak v. Goodyear Tire & Rubber Co., 1942, 139 Ohio St. 181, 38 N.E.2d 1021; Metropolitan Life Insurance Co. v. Hoch, 6 Cir., 1938, 94 F.2d 966, 967; Nickman v. New York Life Ins. Co., 6 Cir., 1930, 39 F.2d 763.

In their brief, taxpayers state their belief that the Ohio authorities are controlling. (Brief, p. 25) In my judgment, the Ohio authorities are persuasive, but they do not support the taxpayers' contention that loss from disease should be treated as a casualty.

Nor do cases [2] relied on by taxpayers giving a somewhat broader interpretation of the words "or theft" as used in the statute furnish a true guide. The reason is that the words "or other casualty" are tied in with the words "fires, storms, shipwreck" whereas the words "or theft" stand off by themselves and relate to an entirely different category. The words "or theft" are, therefore, not limited by the rule of *ejusdem generis*.

The definition of casualty given in Webster's New International Dictionary (2d Ed.) [3] is not particularly helpful. It offers such a wide variation of possible meanings that under it almost any loss could be claimed as a deduction. I cannot conceive of that having been the legislative intent in adding the phrase "other casualty" to the statute. Mere inadvertent losses have uniformly been rejected by the courts as claimed casualties. Keenan v. Bowers, D.C.S.C.1950, 91 F.Supp. 771; 41 A.L.R.2d 710.

The scope given to "other casualty", as used in the statute, is stated to be:

"Generally, 'other casualty' has been confined by the courts to events having the characteristic of being sudden, unexpected and unusual. Were 'other casualty' delimited in its application to include ordinary, commonplace forms of loss of personal property, the resulting Administrative and practical difficulties would not be difficult to imagine. The judicial tendency to limit "other casualty" to sudden, unexpected and unusual events similar to fires, storms and shipwreck has the practical advantage of confining personal losses to somewhat dramatic settings which are susceptible to identification and verification by the administrative authorities. Whether or not a particular event constitutes a casualty within the purview of § 23(e) (3) is largely a matter of degree and judgment." Bercaw v. Commissioner, 8 T.C. 1361, affirmed 4 Cir., 1948, 165 F.2d 521.

This statement not only accurately sets forth the three elements looked for by the courts—sudden, unexpected, unusual—but is quite persuasive in the reason given therefor.

The developing case law on the interpretation of "other casualty" indicates an increasing emphasis on the suddenness of the occurrence.

This point has been considered on several occasions in the New York University Annual Institute on Federal Taxation. In 1947 it was said:

"The interpretations accorded to the word 'casualty' as used in the Statute, involves the intervention of a sudden or destructive force * * *. Melvoin, Deductibility of: Taxes; Rents; Casualty Losses, 6th Annual Institute p. 578."

In the 1954 Annual the statement was made:

"In fact, the court's primary inquiry seems clearly to be on the first element, that is, suddenness; and, where this is absent, the deduction is usually denied. Coplin, Casualty Losses; Recent Developments, 13th Annual Institute, p. 525."

A review of some of the decisions under this provision indicates that this sud-

---

**2.** Burke Grain Company v. Commissioner, 1939, 39 B.T.A. 334; Miller v. Commissioner, 1953, 19 T.C. 1046; Morris Plan Company of St. Joseph v. Commissioner, 1940, 42 B.T.A. 1190, 1195; Muncie v. Commissioner, 1952, 18 T.C. 849, 851.

**3.** (1) Chance; accident; contingency; also, that which comes without design or without being foreseen; an accident

(2) An unfortunate occurrence; a mischance; a mishap; a serious or fatal accident; a disaster

 * * * * *

(7) Injury or death from accident; a person injured or killed by an accident.

denness aspect has been considered crucial in many cases.

In Winters v. United States, 58–1 U.S.T.C. 9205 (D.C.Okl.1958), and Buttram v. Jones, D.C.Okl.1943, 87 F.Supp. 322, it was held that the death of plant life caused by a sudden and unusual drought was a casualty. However, in the recent case of Kemper v. Commissioner, 1959, 30 T.C. 546, it was held that the death of an elm tree which was attributed to a drought of long duration was not a casualty, as lacking in suddenness.

Similarly, while loss occasioned by an earthquake or flood, occurring suddenly and unexpectedly, is deductible as a casualty, Lyman v. Commissioner, 1 Cir., 1936, 83 F.2d 811, progressive deterioration occasioned by the continuing action of the elements is not, Matheson v. Commissioner, 2 Cir., 1931, 54 F.2d 537.

Losses from a sudden freeze [United States v. Barret, 5 Cir., 1953, 202 F.2d 804], a relatively rapid and severe sinking of land [Grant v. Commissioner, 1934, 30 B.T.A. 1028], an auto accident occurring without negligence on the part of the taxpayer [Shearer v. Anderson, 2 Cir., 1927, 16 F.2d 995, 51 A.L.R. 534] and blasting in a quarry near taxpayer's residence [Durden v. Commissioner, 1944, 3 T.C. 1] have all been held casualty losses within the statute. Each involved a sudden and forceful happening.

Conversely, losses caused by infestation of rats [Banigan v. Commissioner, 10 T.C.M. 561 (1951)], by erosion [Texas & Pacific Ry. Co. v. Commissioner, 1 T.C.M. 863 (1943)], by moth damage to a fur coat [Rev. Rul. 55–327, 1955–1 C.B. 25] and by losing personal property [Stevens v. Commissioner, 6 T.C.M. 805 (1947)] have been held non-deductible. In the first three instances suddenness was lacking, while in the fourth force was absent. See also: Mertens, Law of Federal Income Taxation (2d Ed.) § 27.57; 41 A.L.R.2d 691.

The "termite cases" are perhaps the best example of the importance placed on suddenness as an element of "other casualty".

In United States v. Rogers, 9 Cir., 1941, 120 F.2d 244, it was held that damage inflicted on a residence of actor Will Rogers by termites and dry rot some time between 1921 and 1929, severe enough to require razing of the house, was not a casualty. The fact that both the termites and dry rot operated over a long period of time was the controlling factor.

The same year, the Court of Appeals for the Second Circuit held termite damage to be progressive deterioration, rather than a sudden invasion by a hostile force, and disallowed a similar claim. Fay v. Helvering, 2 Cir., 1941, 120 F.2d 253; but cf., Hale v. Welch, D.C.Mass. 1941, 38 F.Supp. 754, 755.

The decision in Rosenberg v. Commissioner, 8 Cir., 1952, 198 F.2d 46, 47, 41 A.L.R.2d 684 was the first to allow a deduction for termite damage. The invasion of the termites, with the resultant damage, took place between September, 1946 and April, 1947. While ostensibly agreeing in principle with the Rogers and Fay holdings, the court considered this to be sudden damage and allowed the deduction. It should be noted that a well considered dissent was entered by Judge Johnsen, wherein he stated that the discovery, and not the damage, was sudden, and that the prior decisions should have been followed.

Subsequently, in Shopmaker v. United States, D.C.Mo.1953, 119 F.Supp. 705 and Buist v. United States, D.C.S.C.1958, 164 F.Supp. 218, claims for termite damage losses were allowed. Both cases were decided with suddenness as the controlling element.

Fay and Rogers were followed in Dodge v. Commissioner, 1957, 25 T.C. 1022 and Feinstein v. United States, D.C.Mo.1954, 173 F.Supp. 893,[4] on the ground of lack of suddenness.

---

4. The same court rendered the decisions in Shopmaker and Feinstein, allowing the deduction in one case and not in the other, considering one to be an instance of a sudden invasion and the second not.

The Internal Revenue Service has announced its acquiescence in the Buist decision (Technical Information Release No. 142, March 23, 1959), but stated that it will adhere to the Fay and Rogers decisions also, allowing deductions only upon proof of the fact of suddenness. Thus the suddenness test has gained recognition by the Service also.

The viewpoint has been expressed that the Rosenberg decision (and necessarily those cases following it) is of dubious validity.[5] In my judgment, Fay and Rogers were correctly decided. While the discovery of the damage took place much sooner in Rosenberg, Shopmaker and Buist than in Fay, Rogers, Feinstein and Dodge, I cannot conceive of the termites having such voracious appetites in the former and not in the latter cases as to render the damage itself sudden rather than progressive. The only real point of difference between the cases is how soon the presence of the termites was discovered. This does not, in my judgment, furnish the right criterion for determining whether the loss constituted a casualty.

Taxpayers have cited no case where a deduction as a casualty loss has ever been allowed for plant life afflicted with disease. The nearest approach is the Rosenberg, Shopmaker and Buist cases.

In those cases, the damage was inflicted by the termites themselves. In the case at bar, the beetles inflicted little or no damage, but acted merely as a carrier of a disease with which the tree became infected. The carrying of disease germs is not peculiar to insects. Disease germs are carried in a variety of ways, even by human beings and by the air which we breathe.

There is nothing sudden, unusual or unexpected for a beetle (or any other insect) to feed on a tree, or to deposit its eggs underneath the bark in the tree lining or to act as a carrier of disease or for the tree to become infected with disease and die in consequence thereof. These are everyday occurrences of nature.

While it is true that the tree was removed within a relatively short period of time, the reason for its removal was the disease which would have ultimately caused its death. The action of the disease is a progressive one. The reason for removing the tree before this progressive force ran its natural course was to prevent the spread of the disease to other trees in the area.

To allow recovery here would necessitate an extension of the doctrine of Rosenberg, Shopmaker and Buist. The result would be to open wide the door to all sorts of claims for casualty deduction on account of loss or damage to plant life or animals caused by any kind of disease. Rosenberg, Shopmaker and Buist do not have a sufficiently firm foundation to warrant their extension.

In common parlance, death resulting from disease is not regarded as an accident. The onset of the disease, whether the illness was of short duration or lingering, and the time of discovery might all have importance in determining whether it was a casualty.

In my judgment, loss occasioned by disease, however contracted, is not a casualty within the meaning of the statute.

It follows that the loss of plaintiffs' elm tree in consequence of the Dutch Elm Disease was not a casualty within the meaning of Section 23(e) (3) of the Internal Revenue Code of 1939 and the Commissioner of Internal Revenue was right in denying the deduction.

This memorandum is adopted as findings of fact and conclusions of law. Judgment will be entered in favor of defendant dismissing the complaint.

---

5. Coplin, Casualty Losses: Recent Developments, 1954 N.Y.U. Institute on Federal Taxation, p. 525. See also: Mertens, Law of Federal Taxation, (2d Ed., 1958 Supp.) § 28.57.